2006 WY 148

**Landy Lee FERTIG, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 04–56.**

Supreme Court of Wyoming.

Nov. 17, 2006.

Representing Appellant: Ken Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Tina N. Kerin, Senior Assistant Public Defender.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General (counsel); D. Michael Pauling, Senior Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

\* Chief Justice at time of oral argument.

BURKE, Justice.

[¶ 1] Landy Lee Fertig appeals from a judgment and conviction following his entry of a conditional guilty plea to one count of felony possession of a controlled substance, methamphetamine. Mr. Fertig entered his conditional plea following the district court's denial of his motion to suppress evidence obtained after Mr. Fertig had been stopped for speeding by Wheatland police. Mr. Fertig does not dispute that the traffic violation was observed by the law enforcement officer who initiated the stop. He contends, however, that the stop was pretextual in nature and violated Article 1, Section 4 of the Wyoming Constitution because the primary motivation of the officer was to conduct a search for evidence of illegal drug activity. We find no error in the district court's denial of the motion to suppress and affirm the conviction.

## ISSUE

[¶ 2] Does a traffic stop initiated by law enforcement after observing a traffic offense violate Article 1, Section 4 of the Wyoming Constitution when the primary purpose of the stop is to conduct a search for evidence of illegal drug activity?

## FACTS

[¶ 3] On the evening of April 19, 2003, Officer Brian McPhillips received information from a confidential informant indicating that illegal drug activities were taking place at a specific residence in Wheatland. At the time, Officer McPhillips was a member of the Southeast Task Force of the Division of Criminal Investigation on assignment with the Wheatland Police Department. He was advised that Mr. Fertig was at the residence and that Mr. Fertig "possibly" would be in possession of drugs.

[¶ 4] Officer McPhillips established surveillance of the residence and observed Mr. Fertig's vehicle at the residence. Officer McPhillips contacted Officer Willadsen of the Wheatland Police Department and advised Officer Willadsen and another Wheatland police officer of the situation and requested that they position their vehicles along the two most likely routes of travel between the residence and Mr. Fertig's house. He asked the officers to keep a watch for the Fertig vehicle and requested that they stop the vehicle if they observed a traffic violation. Officer McPhillips hoped that the traffic stop would provide an opportunity to search for evidence of illegal drug activity.

[¶ 5] At approximately 2:40 a.m., Officer McPhillips observed Mr. Fertig leave the residence. He notified the officers and provided a description of Mr. Fertig's vehicle. Officer Willadsen spotted the vehicle and, using his radar, recorded the speed of the vehicle at 38 mph. Mr. Fertig was traveling in a 30 mph zone at the time. Officer Willadsen initiated a traffic stop of the Fertig vehicle and notified dispatch of the stop and his location. He then proceeded to the vehicle and requested that Mr. Fertig produce his driver's license, registration, and proof of insurance. Mr. Fertig provided his driver's license, but was unable to immediately locate the other documents.

[¶ 6] Officer Willadsen returned to his vehicle. In the meantime, Officer McPhillips arrived on the scene and positioned himself by the front passenger door of the Fertig vehicle. While in that position, he observed Mr. Fertig searching his glove box for the documents. Officer McPhillips observed a kitchen spoon with white crystalline rings on its surface in the glove box. He recognized the spoon as a device used to heat powdered methamphetamine into a liquid for intravenous injection. He concluded that he had probable cause to search the vehicle for illegal controlled substances and asked Mr. Fertig to exit the vehicle. Mr. Fertig complied. After exiting the vehicle, Mr. Fertig was placed in handcuffs and arrested for possession of drug paraphernalia in violation of a Wheatland ordinance. Officer McPhillips retrieved a bag containing approximately ten grams of methamphetamine from Mr. Fertig's shirt pocket.

[¶ 7] Mr. Fertig was charged with felony possession of methamphetamine. Prior to trial, he filed a motion to suppress evidence on the basis that the traffic stop was pretextual and violated Article 1, Section 4 of the Wyoming Constitution. A hearing on the motion was held. During the hearing, both

officers testified that the primary purpose for the stop was to conduct a search for drugs. The district court denied the motion stating:

Under the U.S. Constitution an officer's subjective intent i[s] unimportant to the validity of an arrest or detention. If an officer validly stops a defendant for a traffic violation, the U.S. Constitution does not render that detention unreasonable simply because the officer thought or hoped the stop would render evidence of other criminal activity. *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 13[5] L.Ed.2d 89 (1996); *Arkansas v. Sullivan*, 532 U.S. 769, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001). In those holdings the U.S. Supreme Court said state constitutions may limit evidence obtained in such traffic stops even if the U.S. Constitution does not. The Defendant claims that the Wyoming Constitution restricts officers who make traffic stops more than the U.S. Constitution does. In support of this argument the Defendant points out that Article I, § 4 of the Wyoming Constitution requires affidavits in support of search warrants, whereas the 4th Amendment of the U.S. Constitution requires only an "oath or affirmation." The Court finds nothing in Defendant's argument, or in the Wyoming Constitution, to support his position. Further, the Court finds nothing unreasonable about the detention of the Defendant in this case. To the contrary, the officers acted very reasonably in stopping the Defendant. He violated a speeding ordinance and should have been stopped.

The Defendant's position, taken to its logical (and absurd) conclusion, is that police officers either should not make traffic stops of individuals suspected of other crimes, or, if they do make traffic stops, they should not observe evidence in plain view.

Mr. Fertig subsequently entered a conditional guilty plea to the charges, reserving his right to challenge the denial of his motion to suppress. He was sentenced to a term of 48–84 months in the Wyoming State Penitentiary. The sentence was suspended and he was placed on probation for seven years. This appeal followed.

## STANDARD OF REVIEW

[¶ 8] We will not disturb the factual findings of a district court in determining a motion to suppress unless the findings are clearly erroneous. *O'Boyle v. State*, 2005 WY 83, ¶ 18, 117 P.3d 401, 407 (Wyo.2005). Whether an unreasonable search or seizure occurred in violation of constitutional rights presents a question of law which we review *de novo. Id.*

## DISCUSSION

[¶ 9] The sole issue presented for our resolution is whether a pretextual traffic stop violates Article 1, Section 4 of the Wyoming State Constitution. A pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated crime for which they did not have the reasonable suspicion necessary to support a stop. *United States v. Botero–Ospina*, 71 F.3d 783, 786 (10th Cir.1995) (en banc).

[¶ 10] Mr. Fertig does not dispute that he was speeding or was clocked traveling 38 mph in a 30 mph zone. He admits that Officer Willadsen had probable cause to initiate a traffic stop based upon personal observation of the speeding violation. He asserts, however, that he was stopped for the infraction only because of the underlying motive of the officers to search for narcotics. The underlying motive, according to Mr. Fertig, renders the stop unconstitutional at its inception.

[¶ 11] The State concedes that the stop of Mr. Fertig's vehicle was pretextual. The primary purpose of the stop was to obtain evidence of illegal drug activity.[1] The State

---

1. The State's concession that the stop was pretextual is premised upon its response to the motion to suppress. As explained by the State in its brief:

... in spite of an abundance of almost "real time" information about the drug transaction supplied by the confidential informant to the police, the prosecutor specifically eschewed any reliance on probable cause to stop and

contends, however, that the subjective intent of the officers for making the stop is irrelevant in determining whether the stop satisfies the requirements of Article 1, Section 4 of the Wyoming Constitution. According to the State, because Officer Willadsen personally observed a traffic violation, he had probable cause to initiate the traffic stop. The State succinctly sums up its position as follows: "While the officers involved acknowledged that they were hoping to stop [Mr. Fertig] for a traffic violation as a pretext to look for any drugs that might be in plain view, [Mr. Fertig] obliged them on both counts. The stop of [Mr. Fertig's] vehicle was initiated because he was speeding, and [Mr. Fertig] was sufficiently careless to expose drug evidence to the officers' plain view. As such, the encounter was constitutionally reasonable under Article 1, § 4. . . ."

[¶ 12] Mr. Fertig concedes that "pretextual stops" are permissible under the federal constitution. In *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996), the United States Supreme Court determined that a pretextual traffic stop did not violate the search and seizure protections afforded by the Fourth Amendment to the United States Constitution. In *Whren*, the officers personally observed the traffic violation and had probable cause to initiate the stop. The Court recognized that "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.*, 517 U.S. at 810, 116 S.Ct. at 1772. Mr. Fertig contends, however, that the Wyoming Constitution affords greater individual protection and that a pretextual stop violates Article 1, Section 4 of the Wyoming Constitution.

[¶ 13] We have explained:

> search Appellant's vehicle based on information supplied by the informant. Nor was it argued below that this was not a "pretext" stop in any event, based on Officer Willadsen's testimony that he typically initiates a stop for speeding when vehicles exceed the speed limit on South Street by five or more miles per hour, as Appellant had done. *See* 1 Wayne R. LaFave, *Search and Seizure*, § 1.4(e) n. 49 (3rd ed.1996 and Supp.2004) (citing cases) (not a

Our state constitution provides protection of individual rights separate and independent from the protection afforded by the U.S. Constitution. The U.S. Supreme Court has made it clear in that states at a minimum must comply with its interpretations of the federal constitution. *Mapp v. Ohio*, 367 U.S. 643, 654–55, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961). However, it also has made clear that states may separately interpret and apply their own constitutions. *Id.* In interpreting their own constitutions, states generally have focused upon whether their particular state constitution provides *greater* protection than the federal constitution. *Mogard v. City of Laramie*, 2001 WY 88, ¶ 5, 32 P.3d 313, ¶ 5 (Wyo.2001). However, using federal law as a guide, states may also conclude that the scope of the protection provided by their constitution is the same as and parallel to that provided by the federal constitution.

*O'Boyle*, ¶ 23, 117 P.3d at 408 (emphasis in original).

[¶ 14] We have not previously analyzed whether a pretextual stop violates Article 1, Section 4 of the Wyoming Constitution. We have applied the holding of *Whren* finding that, under the Fourth Amendment, an officer's subjective intent to search for drugs does not invalidate an otherwise lawful traffic stop. *Damato v. State*, 2003 WY 13, 64 P.3d 700 (Wyo.2003). However, we have expressed concerns regarding police conduct initiated upon pretext, suggesting that such conduct may be significant in an analysis under Article 1, Section 4. *Damato*, ¶¶ 11–12, 64 P.3d at 705–706; *O'Boyle*, ¶ 34, 117 P.3d at 411–412.

[¶ 15] Taking the cue provided in *Saldana v. State*, 846 P.2d 604, 622 (Wyo.1993) (Golden, J., concurring), Mr. Fertig presents his argument that the Wyoming Constitution

> pretext stop where a reasonable officer would have made the stop in the absence of an invalid purpose). On appeal, the State is therefore guided by the only theory offered by the State to the trial court and ruled on—that although this was a pretext stop, it was nevertheless permitted by Article 1, § 4. *Paramo v. State*, 896 P.2d 1342, 1345–46 (Wyo.1995) (citing *Eckert v. State*, 680 P.2d 478, 481 (Wyo.1984)). (Record cite and footnote omitted.)

provides more protection than the Fourth Amendment in the context of pretextual traffic stops utilizing six factors identified in *State v. Gunwall*, 106 Wash.2d 54, 720 P.2d 808 (1986). Those factors are: (1) the textual language; (2) the differences in the texts; (3) constitutional history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern. *Almada v. State*, 994 P.2d 299, 308 (Wyo. 1999). Utilizing those factors, Mr. Fertig asserts that our decision in *Damato* paved the way for his claim and that compelling reasons exist to depart from *Whren*.

■ [¶ 16] Although the six *Gunwall* criteria provide an organized and logical framework for comparing a state constitutional provision to its federal counterpart, we have determined that several of these factors offer little assistance in the search and seizure context:

> [W]e concluded long ago that article 1, § 4 is stronger than its federal counterpart in that it requires search warrants to be supported by an affidavit. *State v. Peterson*, 27 Wyo. 185, 194 P. 342, (1920). *See also Hall v. State*, 911 P.2d 1364 (Wyo.1996). With this exception, however, we have found the first three *Saldana* criteria to be of little assistance in analyzing claims brought specifically under our search and seizure provision. [*Vasquez v. State*, 990 P.2d 476, 484 (Wyo.1999) ]. Except for the affidavit requirement for search warrants, the text of Wyoming's search and seizure provision is substantially the same as the Fourth Amendment, and there is little in the way of Wyoming constitutional history to guide our analysis.

Looking at the fourth *Saldana* factor, preexisting state law, this Court historically has interpreted Wyoming's search and seizure provision as forbidding unreasonable searches and seizures and has said the question of whether a search or seizure was reasonable was one of law to be decided from all the circumstances. *Vasquez*, 990 P.2d at 484, citing *State v. George*, 32 Wyo. 223, 239, 231 P. 683, 688 (1924); *State v. Crump*, 35 Wyo. 41, 51, 246 P. 241, 244 (1926).

*O'Boyle*, ¶¶ 24–25, 117 P.3d at 408–409 (footnote omitted). Additionally, we have recognized that an analysis of the fifth factor, structural differences between the state and federal constitutions, does "not assist us one way or another in our determination." *Almada*, 994 P.2d at 309 (quoting *Vasquez*, 990 P.2d at 485). In the context of this case, only two of the factors, pre-existing state law and matters of particular state or local concern, require discussion. We note also that our analysis is not limited to the *Gunwall* factors. They are merely a list of useful "non-exclusive neutral criteria." *Almada*, 994 P.2d at 309 n. 8; *O'Boyle*, ¶ 24, 117 P.3d at 408.

■ [¶ 17] Mr. Fertig devotes a substantial portion of his argument discussing case law from other states in an effort to persuade this Court that an individual state has a unique and legitimate interest in protecting the rights of its citizenry, and that such decisions do not always derive from textual or structural differences noted in a state's constitutional provisions. We do not disagree with these tenets, but this general case discussion is not particularly helpful in this case. We have already rejected a blind adherence to federal precedent and have recognized that "protection of constitutional rights of the accused is not the peculiar province of the federal courts." *Richmond v. State*, 554 P.2d 1217, 1223 (Wyo.1976). We view the Wyoming Constitution as "a separate and independent source of protection" for Wyoming citizens. *O'Boyle*, ¶ 23, 117 P.3d at 408. While we are empowered to depart from federal precedent, we may nevertheless find federal law helpful in providing guidance in interpreting our constitution. "Although we are not bound by the Fourth Amendment decisions of the United States Supreme Court in this case, we may certainly follow its lead when we find its reasoning persuasive." *Almada*, 994 P.2d at 309.

■ [¶ 18] In broad terms, our review under Article 1, Section 4 requires that searches and seizures be reasonable under all the circumstances. *O'Boyle*, ¶ 31, 117 P.3d at 410; *Vasquez*, 990 P.2d at 489. This is similar to what we have noted concerning the protections of the Fourth Amendment:

The touchstone of our analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security. Reasonableness, of course, depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.

*Barch v. State,* 2004 WY 79, ¶ 7, 92 P.3d 828, 831 (Wyo.2004). A traffic stop is a "seizure" within the meaning of the Fourth Amendment. *Damato,* ¶ 9, 64 P.3d at 704; *Barch,* ¶ 7, 92 P.3d at 831. The traffic stop of Mr. Fertig's vehicle is also a seizure within the meaning of Article 1, Section 4 of the Wyoming Constitution, invoking the requirement that the stop be "reasonable under all of the circumstances." *O'Boyle,* ¶¶ 31, 38, 117 P.3d at 410, 412.

[¶ 19] In *O'Boyle,* we determined that the principles for assessing the reasonableness of a traffic stop under the Fourth Amendment were not significantly different than those applicable separately under the Wyoming Constitution. *O'Boyle,* ¶ 50, 117 P.3d at 415. This statement followed discussion of the two-pronged inquiry testing the reasonableness of investigative detentions stated in *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968), that is: 1) was the initial stop justified; and 2) were the officer's actions during the detention reasonably related in scope to the circumstances that justified the interference in the first instance. *O'Boyle,* ¶ 46, 117 P.3d at 414; *see also Campbell v. State,* 2004 WY 106, ¶ 11, 97 P.3d 781, 784 (Wyo.2004). In *O'Boyle* we tacitly endorsed the two-pronged *Terry* inquiry as providing an appropriate analytical framework for our reasonableness inquiry under Article 1, Section 4. Applying this framework to Mr. Fertig's argument, we conclude that his challenge rests within the first prong of the *Terry* test. He argues that the stop was void at its inception and asks us to declare the use of pretext stops an impermissible law enforcement tactic.

[¶ 20] Mr. Fertig argues that pretextual stops should be deemed unreasonable in order to protect citizens from the specter of having every routine traffic stop transformed into a full-blown search by an officer motivated to seize narcotics. We note the tension created by law enforcement efforts to curb drug trafficking. As one commentator has observed:

In recent years more Fourth Amendment battles have been fought about police activities incident[al] to a stopping for a traffic infraction, what the courts call a routine traffic stop, than in any other context.... [T]he renewed interest of the police in traffic enforcement is attributable to a federally-sponsored initiative related to the war on drugs.

Wayne R. La Fave, *Search and Seizure* § 9.3, at 358–359 (4th ed.2004) (footnotes and quotation marks omitted). While we have acknowledged the importance of drug interdiction activities, we have also expressed willingness to protect the privacy rights of citizens under Article 1, Section 4, if police conduct is unreasonable under all the circumstances. *O'Boyle,* ¶ 34, 117 P.3d at 411.

[¶ 21] We declined to undertake a state constitutional analysis regarding pretextual stops in *Damato* because the issue was not raised by the defendant. In *Damato,* we upheld the validity of the traffic stop under the Fourth Amendment but alluded to the possibility of a different result had we not been constrained to follow the bright-line approach of the U.S. Supreme Court:

The Court has been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers and has held unanimously that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996). *Whren* held that "a traffic-violation arrest ... [will] not be rendered invalid by the fact that it was 'a mere pretext for a narcotics search.'" *Id.* (citing *United States v. Robinson,* 414 U.S. 218, 221 n. 1, 94 S.Ct. 467, 470 n. 1, 38 L.Ed.2d 427 (1973)). The Court later confirmed the validity of *Whren* in *Arkansas v. Sullivan,* 532 U.S. 769, 771–72, 121 S.Ct. 1876, 1878, 149 L.Ed.2d 994 (2001) (per curiam), reversing the Arkansas Supreme Court's decision that a legitimate traffic

stop was invalid when motivated for the purpose of conducting a search for drugs. A concurring opinion written by Justice Ginsburg in *Sullivan* noted that the Arkansas court feared the *Whren* decision would accord police officers disturbing discretion to intrude on individuals' liberty and privacy. *Id.* at 772–73, 121 S.Ct. at 1879 (Ginsburg, J., concurring). The Arkansas Court had expressed unwillingness "to sanction conduct where a police officer can trail a targeted vehicle with a driver merely suspected of criminal activity, wait for the driver to exceed the speed limit by one mile per hour, arrest the driver for speeding, and conduct a full-blown inventory search of the vehicle with impunity." *Id.* The concurring opinion also noted that the Court has held that such exercises of official discretion are unlimited by the Fourth Amendment and cited *Whren* and *Atwater v. Lago Vista*, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001).

The Court clarified that had the Arkansas Supreme Court decided that it could not apply *Whren* under its own state constitution, the Court would not interfere. *Sullivan*, 532 U.S. at 772, 121 S.Ct. at 1878. **The concerns of the Arkansas Supreme Court are also ours where, as here, the officer intended to use any traffic violation as a pretext to conduct a narcotics investigation; however, because Damato does not contend that the Wyoming Constitution provides greater protection in this area, we must follow the federal constitutional decisions in** *Whren* **and** *Sullivan.*

In addition to pretextual reasons, we are concerned also that Damato had previously been stopped and released, and, in a "tag-team" fashion, was passed on to the next jurisdiction to be stopped in hopes the subsequent officer would be more successful in obtaining a canine sniff within a reasonable time. Limited to a federal constitutional analysis, we are constrained to say *Whren* is controlling in this particular case because Officer Bauer stopped Damato for an observed traffic violation. The officer activated his patrol car lights to stop Damato after observing on radar that Damato exceeded the maximum al-

lowable speed limit by two miles per hour in violation of Wyo. Stat. Ann. § 31–5–301. Under Wyoming statute, exceeding the maximum allowable speed limit is a misdemeanor punishable by fines and/or imprisonment. Wyo. Stat. Ann. § 31–5–1201 (LexisNexis 2001). Officer Bauer, therefore, had probable cause to stop Damato because he had observed a traffic violation. *Whren*, 517 U.S. at 810, 116 S.Ct. at 1772.

*Damato*, ¶¶ 10–12, 64 P.3d at 705–706 (emphasis added). We expressed similar concerns in *O'Boyle*, ¶ 34, 117 P.3d at 411–12.

[¶ 22] Mr. Fertig argues that matters of state concern require a departure from *Whren*. He relies heavily upon the above-quoted language from *Damato* as an indication that, when pretext is involved, we will take a more expansive view of the protections afforded by the Wyoming Constitution. He asserts that Wyoming has a paramount interest in protecting the privacy and liberty interests of our state citizens traveling on state roads. These interests, he contends, will be subverted by greater state intrusions if pretextual traffic stops are not constitutionally prohibited.

[¶ 23] We recognized the state interest identified by Mr. Fertig in *O'Boyle* and expressed our disapproval of citizens "being subjected to what have become routine requests to relinquish their privacy rights by detention, invasive questioning and searches—all without reasonable suspicion of criminal activity other than the offense giving rise to the stop." *O'Boyle*, ¶ 34, 117 P.3d at 411. Significantly, however, in *O'Boyle*, the focus of our constitutional analysis involved an evaluation of police conduct after the stop. We did not question an officer's authority to initiate a traffic stop after an observed traffic violation and in *Damato*, we recognized that an officer has probable cause to initiate a traffic stop when the officer personally observes a traffic violation. *Damato*, ¶ 12, 64 P.3d at 706.

[¶ 24] While we recognize the privacy rights of those traveling our highways, we must also acknowledge that motorists should "reasonably expect that law enforcement offi-

cers may stop them for violating traffic laws." *People v. Haley*, 41 P.3d 666, 673 (Colo.2001). Instead of examining the reasonable privacy expectations of Wyoming motorists, Mr. Fertig focuses upon the officer's subjective intent. He contends that allowing pretextual stops would encourage arbitrary exercise of police power and selective enforcement of traffic laws. A similar argument was presented in *Whren:*

> Petitioners accept that Officer Soto had probable cause to believe that various provisions of the District of Columbia traffic code had been violated.... They argue, however, that "in the unique context of civil traffic regulations" probable cause is not enough. Since, they contend, the use of automobiles is so heavily and minutely regulated that total compliance with traffic and safety rules is nearly impossible, a police officer will almost invariably be able to catch any given motorist in a technical violation. This creates the temptation to use traffic stops as a means of investigating other law violations, as to which no probable cause or even articulable suspicion exists.

*Whren*, 517 U.S. at 810, 116 S.Ct. at 1772–1773 (internal citations omitted). The United States Supreme Court flatly rejected the argument:

> [W]e are aware of no principle that would allow us to decide at what point a code of law becomes so expansive and so commonly violated that infraction itself can no longer be the ordinary measure of the lawfulness of enforcement. And even if we could identify such exorbitant codes, we do

not know by what standard (or what right) we would decide, as petitioners would have us do, which particular provisions are sufficiently important to merit enforcement.

*Id.*, 517 U.S. at 818–819, 116 S.Ct. at 1777.

[¶ 25] Mr. Fertig does not identify a single decision from any state court that has rejected *Whren*.[2] In nearly every state that has considered the issue, *Whren* has been followed or cited with approval. *See People v. Robinson*, 97 N.Y.2d 341, 741 N.Y.S.2d 147, 767 N.E.2d 638, 642 (N.Y.2001) (collecting cases). For those courts, probable cause arising from an observed traffic violation justifies a traffic stop. *See, e.g., State v. McClendon*, 350 N.C. 630, 517 S.E.2d 128, 132 (1999) (adopting the reasoning of *Whren* and holding that an objective standard, rather than a subjective standard, must be applied to determine the reasonableness of police action related to probable cause); *State v. Farabee*, 302 Mont. 29, 22 P.3d 175, 181 (2000) (stating that the lawfulness of a traffic stop under the Montana Constitution depends on whether the officer had a particularized suspicion that an occupant of the vehicle has committed or is committing an offense); *State v. Vineyard*, 958 S.W.2d 730, 736 (Tenn.1997) (concluding that probable cause justifies a traffic stop under Article 1, Section 7 of the Tennessee Constitution regardless of the subjective motivations of police officers); and *Dufries v. State*, 133 P.3d 887, 889 (Okla.Crim.App.2006) (holding that if the officer had probable cause to believe a driver had violated some traffic law, stopping the driver's vehicle is lawful regardless of the officer's subjective motivation for the stop).

---

2. Although not cited by the parties, we note that the Washington Supreme Court has declared pretextual stops unconstitutional under its state constitution. *State v. Ladson*, 138 Wash.2d 343, 979 P.2d 833 (1999). The dissenting opinion in *Ladson* criticizes the majority for "collapsing" the two prongs of the *Terry* analysis and for disregarding the import of probable cause as justification for a traffic stop. According to the dissent:

> The issue in this case is whether the fact that the officer has another motive in addition to the belief that a traffic infraction has occurred renders a traffic stop unconstitutional at its inception. Contrary to the majority's view, I would hold that the officer's motive does not turn a stop based upon probable cause that a

traffic violation has occurred into an unlawful stop. Regardless of the officer's motive, the probable cause standard provides the reasonableness necessary to justify the warrantless stop.... Washington citizens who commit traffic infractions have privacy interests at issue when traveling in a vehicle, but those interests are not unreasonably intruded upon where the individual commits a traffic infraction in the presence of an officer and is therefore stopped for issuance of a citation and notice. Our expectations are that we will be stopped and cited for traffic infractions, and we cannot reasonably expect that we are protected from such a stop depending on the officer's other motives.

*Ladson*, 979 P.2d at 845 (Madsen, J., dissenting).

[¶ 26] In encouraging us to depart from *Whren*, Mr. Fertig places particular emphasis on the language quoted in *Damato* and *O'Boyle* from *Arkansas v. Sullivan*, 532 U.S. 769, 773, 121 S.Ct. 1876, 1879, 149 L.Ed.2d 994 (2001) and *State v. Sullivan*, 340 Ark. 315, 16 S.W.3d 551, 552 (2000). *Sullivan* involved a pretextual arrest, not a traffic stop. *State v. Sullivan*, 348 Ark. 647, 74 S.W.3d 215, 219 n. 1 (2002).[3] Subsequently, in *State v. Harmon*, 353 Ark. 568, 113 S.W.3d 75 (2003), the Supreme Court of Arkansas, interpreting the Arkansas constitution, refused to apply its *Sullivan* rationale to traffic stops, reasoning that a traffic stop does not present the heightened intrusiveness of an arrest. The court observed that "an otherwise valid stop does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity." *Harmon*, 113 S.W.3d at 79.

[¶ 27] We also find the rationale of *Whren* persuasive in that we are not in a position to identify which traffic laws should be enforced and which violations should be disregarded by law enforcement. Violations of the traffic code provide an objective standard by which to judge the reasonableness of a traffic stop seizure because an observed violation provides probable cause for a traffic stop seizure. *Whren*, 517 U.S. at 818–819, 116 S.Ct. at 1776–1777; *Damato*, ¶ 12, 64 P.3d at 706. Contrary to Mr. Fertig's assertion, efforts to enforce traffic laws are objectively reasonable:

> Because the Vehicle and Traffic Law provides an objective grid upon which to measure probable cause, a stop based on that standard is not arbitrary in the context of constitutional search and seizure jurisprudence.... [P]robable cause stops are not based on the discretion of police officers. They are based on violations of law. An officer may choose to stop someone for a "minor" violation after considering a number of factors, including traffic and weather conditions, but the officer's

authority to stop a vehicle is circumscribed by the requirement of a violation of a duly enacted law. In other words, it is the violation of a statute that both triggers the officer's authority to make the stop and limits the officer's discretion.

*Robinson*, 741 N.Y.S.2d 147, 767 N.E.2d at 646–647. We agree that in examining the justification for a traffic stop under the first prong of *Terry*, an officer's subjective intent does not vitiate the probable cause that would otherwise justify the stop.

[¶ 28] We conclude that a traffic stop initiated by a law enforcement officer after personally observing a traffic violation is supported by probable cause and does not violate Article 1, Section 4 of the Wyoming Constitution, regardless of the officer's primary motivation. Our holding in this case addresses only the initial police action upon which the vehicular stop was predicated. The scope, duration, and intensity of the seizure, as well as any search made by the police subsequent to that stop, remain subject to the strictures of Article 1, Section 4, and judicial review. The nature of the traffic offense remains relevant in determining whether the search and seizure was "reasonable under all of the circumstances" as required by Article 1, Section 4. *O'Boyle*, ¶ 31, 117 P.3d at 410; *Vasquez*, 990 P.2d at 489.

[¶ 29] It is undisputed that Officer Willadsen personally observed the traffic violation and had probable cause to initiate the traffic stop. The scope, duration, and intensity of the seizure, after the initial stop, are not contested by Mr. Fertig. Accordingly, the district court properly denied the motion to suppress.

[¶ 30] Affirmed.

---

3. Likewise, we note a significant distinction between investigative detentions and arrests, and do not, by this opinion, intend to change what we

previously stated about pretextual arrests in *Brown v. State*, 738 P.2d 1092, 1095 (Wyo.1987).