# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 70

### APRIL TERM, A.D. 2023

### July 14, 2023

CRISTIAN M. RAMIREZ,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

HECTOR ZAPIEN-GALVAN,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

S-22-0301, S-22-0302

*Appeal from the District Court of Albany County*
*The Honorable Misha E. Westby, Judge*

*Representing Appellants:*
Office of the State Public Defender: Diane Lozano, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel. Argument by Mr. Morgan.

*Representing Appellee:*
Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Donovan Burton, Assistant Attorney General. Argument by Mr. Burton.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    In these consolidated appeals, Cristian Ramirez and Hector Zapien-Galvan (Galvan) (together, Appellants) appeal the district court's denial of their joint motion to suppress over 300 pounds of marijuana discovered during a traffic stop on Interstate 80 (I-80) in Albany County, Wyoming. Appellants claim the state trooper's conduct in pursuing their vehicle without reasonable suspicion vitiated the subsequent probable cause for the search. We affirm.

## ISSUE

[¶2]    Appellants present a single issue:

> Did the district court err when it denied Appellants' motion to suppress evidence?

## FACTS

[¶3]    The facts in this case are undisputed. On March 20, 2022, Trooper Cody Tippy was parked on the median of I-80 near milepost 287 with Trooper Merrit as a passenger. He observed two males in a white Ford Expedition with out-of-state license plates driving eastbound at the posted speed limit. Trooper Tippy pulled onto I-80 to "catch up" to the vehicle, and in doing so exceeded the speed limit. At times he possibly drove up to 120 miles per hour. According to his testimony at the suppression hearing, his intention was to investigate possible drug activity. When asked why he decided to chase the Expedition, he stated "It's an oversize rental. So if there's only two people in a vehicle, then they don't need to be renting out like a Ford Expedition what that one was." Trooper Tippy admitted he did not know the car was a rental until after the stop. Later, when questioned about the relevance of the size of the vehicle in terms of his training in highway "drug interdiction," Trooper Tippy, testified, "You fit more stuff inside of a vehicle. Like, you can fit more contraband or you can fit more anything else like that inside of a large, larger vehicle than you can inside of like a, say, like a Toyota Camry."

[¶4]    At milepost 289, Trooper Tippy caught up to the Expedition which was traveling at 68 miles per hour in the right lane. Trooper Tippy, who was driving in the left lane, positioned his vehicle even with the Expedition. He observed two males, later identified as Mr. Ramirez, the driver, and Mr. Galvan, the passenger. Blankets were pressed against the window blocking the view of the back seat interior. Trooper Tippy pulled in behind the vehicle and Trooper Merrit ran the Expedition's plates discovering the registration had expired. Trooper Tippy performed a traffic stop based on the expired registration. Trooper Tippy asked Mr. Ramirez for his driver's license, registration, and proof of insurance. Mr. Ramirez produced his California driver's license. He told Trooper Tippy the Expedition

1

was a rental and did not have the registration or proof of insurance. While at the window, Trooper Tippy noticed a gray blanket covering large items in the back of the Expedition.

[¶5]   Mr. Ramirez told Trooper Tippy Mr. Galvan had rented the car. When Trooper Tippy asked Mr. Galvan for his driver's license, Mr. Galvan said he did not have one and it was his uncle who rented the car. While Mr. Galvan searched for the rental agreement, Trooper Tippy brought Mr. Ramirez to the front seat of his patrol car and questioned him about his travel plans. Mr. Ramirez told Trooper Tippy that he was traveling from California to Chicago, Illinois, to look at a car. He said he had just met "Hector" (Mr. Galvan) and did not know his last name, but he had worked with his uncle. After further questioning produced vague replies, Trooper Tippy informed Mr. Ramirez of his *Miranda* rights and placed him in the back seat of the patrol car. He then brought Mr. Galvan to the back seat of the patrol car and informed him that he was being detained as well.

[¶6]   The Appellants refused to consent to a search of the Expedition and Trooper Tippy called for a canine unit. Trooper Michael Petruso responded with his certified canine, Becky. Becky alerted around the rear door seam by the cargo area. Following a search, large vacuum-sealed packages containing 320.6 pounds of marijuana were discovered underneath the blankets.

[¶7]   The Appellants were charged with two felony counts: possession of marijuana in violation of Wyo. Stat. Ann. § 35-7-1031(c)(i)(A) (Count One); and possession of marijuana with intent to deliver in violation of Wyo. Stat. Ann. § 35-7-1031(a) (Count Two). Appellants pled not guilty. They later filed a joint motion to suppress evidence, claiming Trooper Tippy's conduct prior to checking the Expedition's registration was unreasonable and in violation of Article 1, § 4 of the Wyoming Constitution and the Fourth Amendment to the United States Constitution.

[¶8]   The district court declined to conduct an independent analysis under the Wyoming Constitution. Noting that the Appellants' brief stated that the United States and Wyoming Constitutions "agree" on the standard of reasonableness for a traffic stop, the district court found that the Appellants' brief had not sufficiently presented an independent claim, nor had they argued any difference between the federal and state standards. Following an analysis under both federal and state standards, the district court denied the motion to suppress.

[¶9]   The Appellants' arguments relied primarily on our decision in *Levenson v. State*, 2022 WY 51, 508 P.3d 229 (Wyo. 2022), which we address in our discussion. The district court distinguished the factual basis in *Levenson* from the facts underlying Appellants' cases and concluded that "Trooper Tippy's conduct in speeding is not sufficient, in and of itself, to negate the reasonableness of the traffic stop, when considered in the totality of the circumstances." It further held that, under *Fertig v. State*, 2006 WY 148, ¶¶ 28–29, 146

P.3d 492, 501 (Wyo. 2006), Trooper Tippy's motivation in making the traffic stop—suspicion of possible drug activity—did not undermine the constitutionality of the stop.

[¶10] Following the district court's denial of the motion to suppress evidence, both Appellants entered a conditional plea agreement providing that Count One would be dismissed and they would plead guilty to Count Two with the right to appeal the denial of their motion. The district court accepted these terms. It sentenced Mr. Galvan to two to four years incarceration, suspended, with two years unsupervised probation. Mr. Ramirez was sentenced to three to five years incarceration, also suspended with unsupervised probation for two years.

[¶11] We consolidated the Appellants' cases on appeal as the facts and the issues raised are identical.

## STANDARD OF REVIEW

[¶12] Our standard of review governing the denial of a motion to suppress is as follows:

> [W]e view "the evidence in the light most favorable to the district court's determination and defer[] to the district court's factual findings unless they are clearly erroneous." *Simmons v. State*, 2020 WY 132, ¶ 10, 473 P.3d 1259, 1261 (Wyo. 2020) (alteration in the original) (quoting *Robinson v. State*, 2019 WY 125, ¶ 20, 454 P.3d 149, 156 (Wyo. 2019)). "We view the evidence in the light most favorable to the district court's decision because the court conducted the hearing and had the opportunity to 'assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions." *Dixon v. State*, 2019 WY 37, ¶ 17, 438 P.3d 216, 226 (Wyo. 2019) (quoting *Kunselman v. State*, 2008 WY 85, ¶ 9, 188 P.3d 567, 569 (Wyo. 2008)). "On those issues where the district court has not made specific findings of fact, this Court will uphold the general ruling of the court below if supported by any reasonable view of the evidence." *Elmore v. State*, 2021 WY 41, ¶ 8, 482 P.3d 358, 361 (Wyo. 2021) (quoting *Pryce v. State*, 2020 WY 151, ¶ 16, 477 P.3d 90, 94–95 (Wyo. 2020)). The ultimate question of whether the search or seizure violated a constitutional right is a question of law that we review de novo. *Elmore*, ¶ 8, 482 P.3d at 361; *Fertig*, ¶ 8, 146 P.3d at 495; *see also O'Boyle v. State*, 2005 WY 83, ¶ 22, 117 P.3d 401, 408 (Wyo. 2005) (reviewing de novo whether a traffic stop violated Article 1, § 4 of the Wyoming Constitution).

*Levenson*, ¶ 16, 508 P. 3d at 235; *see also Joseph v. State*, 2023 WY 58, ¶ 15, 530 P.3d 1071, 1074 (Wyo. 2023).

## *DISCUSSION*

### I.    *Did the district court err when it denied Appellants' motion to suppress evidence?*

[¶13]  Appellants challenge the district court's denial of their motions to suppress under Article 1, § 4 of the Wyoming Constitution and the Fourth Amendment to the United States Constitution.  On appeal, they claim that the district court erred in failing to conduct an independent state constitutional analysis of their claim and in finding the initial traffic stop was justified despite Trooper Tippy's conduct preceding the stop.  Appellants raise a new issue on appeal, claiming that Trooper Tippy's pursuit was based on racial profiling.  The State argues no independent state constitutional analysis was required because Appellants failed to adequately present an independent Wyoming constitutional claim and Trooper Tippy's actions did not invalidate the probable cause for the stop.

### A.    The district court was not required to conduct an independent state constitutional analysis of Appellants' claim.

[¶14]  Appellants maintain the district court erred by failing to separately analyze their claims under the Wyoming Constitution.  They rely on *Damato v. State* where we said, "A state constitutional analysis is required unless a party desires to have an issue decided solely under the Federal Constitution." *Damato v. State*, 2003 WY 13, ¶ 8, 64 P.3d 700, 704 (Wyo. 2003) (quoting *Vasquez v. State*, 990 P.2d 476, 485 (Wyo. 1999)).  They assert their brief to the district court contained a separate section addressing Article 1, § 4 of the Wyoming Constitution and this section presented Wyoming cases recognizing, in some circumstances, Article 1, § 4 may provide "greater protections than the Fourth Amendment." *Gibson v. State*, 2019 WY 40, ¶ 12, 438 P.3d 1256, 1259 (Wyo. 2019).[1]  Appellants argue that "[a]lthough perhaps not the most artfully crafted motion," the motion and brief were sufficient to raise an independent claim requiring independent analysis under the Wyoming Constitution prior to consideration of their Fourth Amendment argument.  We disagree.

[¶15]  As we have explained, to invoke an independent Wyoming constitutional analysis, "the appellant must 'use a precise and analytically sound approach and provide [the Court] with proper arguments and briefs to ensure the future growth of this important area of law.'" *Morgan v. State*, 2004 WY 95, ¶ 20, 95 P.3d 802, 808 (Wyo. 2004) (quoting *Saldana v. State*, 846 P.2d 604, 624 (Wyo. 1993) (Golden, J., concurring)).  "In our prior

---

[1] For example, they cited to our recent decision in *Levenson* in support of their argument that Trooper Tippy's conduct was so unreasonable that it negated any objective justification for the stop.

4

consideration of Article 1, Section 4 of the Wyoming Constitution,[2] we have noted the textual differences between it and the Fourth Amendment[3] and have concluded Article 1, Section 4 is more protective based on its requirement of an affidavit to support a warrant application." *Joseph*, ¶ 20, 530 P.3d at 1076 (citing *Fertig*, ¶ 16, 146 P.3d at 497 (quoting *O'Boyle v. State*, 2005 WY 83, ¶¶ 24–25, 117 P.3d 401, 408–09 (Wyo. 2005))). "[I]n the search and seizure context, . . . preexisting state law and matters of particular state or local concern[] are helpful to our analysis." *Id.* (citing *Fertig*, ¶ 16, 146 P.3d at 497).

[¶16] "The Wyoming Supreme Court continues to be willing to independently interpret the provisions of the Wyoming Constitution." *Sheesley v. State*, 2019 WY 32, ¶ 14, 437 P.3d 830, 836 (Wyo. 2019) (quoting *Saldana*, 846 P.2d at 624 (Golden, J., concurring)).[4] We do not require a rigid formulaic approach, but the analysis must include why, "in a given situation, a state constitution should be considered as extending broader rights to its citizens than does the United States Constitution." *Sheesley*, ¶ 15, 437 P.3d at 837.

[¶17] Appellants did not make an argument corresponding to the approach described in *Sheesley*. Instead, they argued Wyoming precedent mirrors the considerations of its federal counterpart when examining or analyzing the reasonableness of a traffic stop. In their preface to their Wyoming constitutional argument, they stated:

> I. THE STATES['] EVIDENCE SHOULD BE SUPPRESSED AS IT WAS OBTAINED IN VIOLATION OF THE DEFENDANTS['] FOURTH AMENDMENT RIGHTS.
>
> Both the Wyoming Constitution and the United States Constitution provide that people have the right " . . . against unreasonable searches and seizures." Wyo. Const. art. 1, § 4;

---

[2] Article 1, § 4 of the Wyoming Constitution provides:
> **Security against search and seizure.**
> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized.

Wyo. Const. art. 1, § 4.

[3] The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV.

[4] In his *Saldana* concurrence, Justice Golden suggested six "non-exclusive neutral criteria" relevant to determining whether the Wyoming Constitution extends broader rights to Wyoming citizens than the United States Constitution. *Saldana*, 846 P.2d at 622 (Golden, J., concurring). Those factors include: "(1) the textual language; (2) the differences in the texts; (3) constitutional history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern." *Id.* (quoting *State v. Gunwall*, 720 P.2d 808, 811 (Wash. 1986)).

5

U.S. Const. amend. IV. Defendants were subjected to a search
of their vehicle in violation of these Constitutional Provisions.

At the beginning of their Fourth Amendment argument, Appellants wrote, "[t]he protections provided under the Wyoming Constitution and the Fourth Amendment are substantially the same[,]" and "[r]egarding the reasonableness of a stop, the Wyoming Constitution and the Fourth Amendment agree." The Appellants did not raise an independent argument under the Wyoming Constitution requiring the district court to conduct a separate analysis.

**B.      The initiation of the traffic stop was not unreasonable under the Wyoming or United States Constitutions.**

[¶18]  The Appellants claim Trooper Tippy's conduct prior to the traffic stop—speeding to catch up to Appellants' vehicle without any observed illegal activity—was unreasonable and in violation of both the Wyoming and United States Constitutions. They do not claim any constitutional infirmity in the probable cause giving rise to the stop, the investigation during the stop, or the subsequent arrest. The State counters that Trooper Tippy's conduct did not undermine the justification for the traffic stop.

[¶19]  To pass constitutional muster under the Wyoming Constitution, a "traffic stop . . . must be reasonable under all the circumstances." *Levenson*, ¶ 19, 508 P.3d at 235–36, (citing *Klomliam v. State*, 2014 WY 1, ¶ 17, 315 P.3d 665, 669 (Wyo. 2014); *O'Boyle*, ¶ 29, 117 P.3d at 409–10). Reasonableness is a question of law to be decided from all the circumstances. *Id.* (citing *Klomliam*, ¶ 17, 315 P.3d at 669; *Dods v. State*, 2010 WY 133, ¶¶ 5, 16, 240 P.3d 1208, 1209, 1212 (Wyo. 2010)). Like the Wyoming Constitution, the Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures." U.S. Const. amend. IV.

> We evaluate the reasonableness of an investigatory [detention] under the Fourth Amendment by using the two-part inquiry from *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968): (1) whether the initial stop was justified; and (2) whether the officer's actions during the detention were reasonably related in scope to the circumstances that justified the interference in the first instance.

*Levenson*, ¶ 31, 508 P.3d at 240 (quoting *Pryce v. State*, 2020 WY 151, ¶ 18, 477 P.3d 90, 95 (Wyo. 2020)).

[¶20]  We apply an objective analysis of all the surrounding facts and circumstances to determine whether the officer was justified in making the stop. *Levenson*, ¶ 19, 508 P.3d

at 236; *Dods*, ¶ 16, 240 P.3d at 1212 (citing *United States v. Ozbirn*, 189 F.3d 1194, 1198 (10th Cir. 1999)); *O'Boyle*, ¶ 29, 117 P.3d at 410. This includes "an officer's conduct, no matter his subjective intent." *Levenson*, ¶ 19, 508 P.3d at 236; *Pier v. State*, 2019 WY 3, ¶ 18, 432 P.3d 890, 896 (Wyo. 2019) (an officer's subjective intent does not invalidate an otherwise lawful traffic stop (quoting *Fertig*, ¶ 14, 146 P.3d at 496)). "There is no bright-line rule, and the officer's conduct is only one of the circumstances we must consider when examining whether the initial stop was reasonable." *Levenson*, ¶ 27, 508 P.3d at 239 (citations omitted).

[¶21] Appellants rely on our holding in *Levenson*, where we held that a law enforcement officer's conduct can, under some circumstances, negate the probable cause for a traffic stop under both Article 1, § 4 of the Wyoming Constitution and the Fourth Amendment. *Levenson*, ¶ 29, 508 P.3d at 239 (Wyoming Constitution); *Levenson*, ¶ 34, 508 P.3d at 241 (Fourth Amendment). Appellants argue Trooper Tippy's conduct is equivalent to the conduct we found constitutionally unreasonable in *Levenson*.

[¶22] The facts in this case are distinguishable from those in *Levenson*. In *Levenson*:

> As Trooper Carraher testified, he was parked in the median and noticed the Nissan Rogue and several semi-trucks pass him. Without personally observing any traffic violation, Trooper Carraher decided to follow the Nissan Rogue. As the video depicts, and Trooper Carraher readily admitted, he reached a speed of 111 miles per hour to catch up to the Nissan Rogue. Arguably, Trooper Carraher violated the law by speeding to catch up to the Nissan Rogue without ever witnessing a traffic violation.
>
> Observing Trooper Carraher's rapid approach, Ms. Busch moved into the right lane between two semi-trucks. Trooper Carraher then slowed down significantly and positioned himself in the left lane behind the Nissan Rogue so he could travel behind the vehicle at a similar rate of speed. The Trooper's conduct congested traffic and required the Nissan Rogue to remain in the right lane between the two semi-trucks, all of which were approaching a busy interchange with the lead semi-truck slowing down to exit onto Southbound I-25.

*Id.* ¶¶ 28–29, 508 P.3d at 239 (footnote omitted).

[¶23] At that point, Trooper Carraher was close enough to the Nissan Rogue to get an accurate reading on how closely the driver was following the semi-truck. "Using a

stopwatch, he calculated the amount of time between the Nissan Rogue and the semi-truck in front of it. . . . He subsequently stopped the driver of the Nissan Rogue for following the semi-truck too closely." *Id.* ¶ 6, 508 P.3d at 232. During the stop, the Trooper questioned the occupants and formed a suspicion that criminal activity was afoot. Ultimately, a canine search led to the discovery of approximately forty-two pounds of marijuana. *Id.* ¶¶ 9–11, 508 P.3d at 233. The district court denied a motion to suppress the evidence, finding that the Trooper had personally observed a traffic violation which provided probable cause and, under our holding in *Fertig*, pretextual stops do not violate the Wyoming Constitution. *Levenson*, ¶ 14, 508 P.3d at 234.

[¶24] Without disturbing our holding in *Fertig*, we reversed the district court. We held, after a fact-specific inquiry into *all* the circumstances leading to the stop, the trooper's conduct was unreasonable. We found the trooper had not observed any traffic violation before he reached speeds of up to 111 miles per hour (arguably violating Wyo. Stat. Ann. § 31-5-106(a)(iii)) to catch up to the Nissan Rogue.[5] *Levenson*, ¶ 28, 508 P.3d at 239 n.7. The trooper then positioned himself so that the driver could not move to the left lane, corralling the Nissan Rogue between two semi-trucks while he calculated the distance between the Nissan Rogue and the semi-truck. These actions caused the congestion of traffic as motorists were approaching a busy interchange and provoked the traffic violation observed by the Trooper. Our Fourth Amendment analysis included review of federal cases which determined that unjustified actions which "provoke" a traffic violation may, under the totality of the circumstances, invalidate the probable cause supporting a traffic stop. *See United States v. Esteban*, 283 F. Supp. 3d 1115, 1129–30 (D. Utah 2017) (finding that Trooper Tripodi provoked the traffic violation, perhaps unintentionally); *see also United States v. Ochoa*, 4 F. Supp. 2d 1007, 1012 (D. Kan. 1998) (considering the officer's conduct and finding a single lane drift caused by the officer did not amount to a traffic violation justifying an initial stop); *cf. United States v. Worthon*, 520 F.3d 1173, 1179–81 (10th Cir. 2008) (considering the officer's conduct but finding the traffic stop was not unreasonable because the defendant conceded he committed a traffic violation and nothing in the record indicated the officer's conduct was a significant factor in causing the traffic violation).

[¶25] Appellants argue the considerations in *Levenson* apply here. Trooper Tippy did not observe any illegal conduct prior to his decision to give chase. He admitted he reached speeds of up to possibly 120 miles per hour. He pulled next to the Expedition to observe the occupants prior to checking for the expired registration. While the facts may seem comparable to *Levenson*, the decisive facts are significantly different. In *Levenson*, Trooper Carraher's actions provoked the traffic violation on which the stop was based. Here, there is no evidence that Trooper Tippy's actions caused or contributed to the expired

---

[5] Wyo. Stat. Ann. § 31-5-106(a)(iii) provides the driver of an authorized emergency vehicle is only authorized to exceed the maximum speed limits "when responding to an emergency call or when in pursuit of an actual or suspected violator of the law." Wyo. Stat. Ann. § 31-5-106(a)(iii) (LexisNexis 2023).

plates.[6] The determinative facts are insufficient to establish constitutionally unreasonable conduct which would invalidate the justification for the stop.

## C.       We do not consider arguments raised for the first time on appeal.

[¶26]  For the first time on appeal, Appellants claim Trooper Tippy's reason for the stop was not only pretextual, but was also based on racial profiling.[7] We decline to consider this argument for several reasons.  "[W]e have repeatedly held we will not consider an issue raised for the first time on appeal." *Borja v. State*, 2023 WY 12, ¶ 24, 523 P.3d 1212, 1218 (Wyo. 2023) (citing *Rogers v. State*, 2021 WY 123, ¶ 14, 498 P.3d 66, 70 (Wyo. 2021) (citing *Davis v. State*, 2018 WY 40, ¶ 32, 415 P.3d 666, 678 (Wyo. 2018); *Black v. State*, 2017 WY 135, ¶ 15, 405 P.3d 1045, 1051 (Wyo. 2017); *Miller v. Beyer*, 2014 WY 84, ¶ 34, 329 P.3d 956, 967 (Wyo. 2014))).  There are "two exceptions to that rule: when the issue raises jurisdictional questions or it is of such a fundamental nature that it must be considered." *Borja*, ¶ 24, 523 P.3d at 1218 (citations omitted).  "An issue is not necessarily fundamental because it is constitutional[.]" *Id.* (citing *Belanger v. State*, 2021 WY 110, ¶ 22, 496 P.3d 770, 776 n.1 (Wyo. 2021)).  Appellants do not explain why we should consider their newly minted claim or argue that it is fundamental.  Indeed, they fail to mention that this is an issue not raised below.

[¶27]  Not only did the district court not address the issue, but the record is undeveloped for our review.  *Cf. Mahaffy v. State*, 2021 WY 63, ¶¶ 12, 14, 486 P.3d 170, 173–74 (Wyo. 2021), *cert. denied*, — U.S. —, 142 S.Ct. 485, 211 L.Ed.2d 294 (2021); *Brown v. State*, 2019 WY 42, ¶ 17, 439 P.3d 726, 731–32 (Wyo. 2019); *Bittleston v. State*, 2019 WY 64, ¶ 37, 442 P.3d 1287, 1296 n.9 (Wyo. 2019) ("We think it reasonable to assume that had the State been defending against a suppression motion [based on racial profiling], the nature of the stop and questioning would have been carefully explored."); *see Barney v. State*, 2022 WY 49, ¶ 35, 507 P.3d 459, 465 (Wyo. 2022) (holding appellant could not raise issue for first time on appeal and noting the record was undeveloped for review).  Because

---

[6] Wyo. Stat. Ann. § 31-4-101(e) provides:
> (e) No person shall operate a vehicle in any manner with an expired or improper registration, permit, decal or any other department approved registration upon any highway or other publicly maintained roadway in this state.

Wyo. Stat. Ann. § 31-4-101(e) (LexisNexis 2023).

[7]
> Racial profiling is a term which describes an adverse action directed at a person because of his or her race or ethnicity.  Such action is typically engaged in by police or law enforcement officers or personnel.  Racial profiling most often occurs in connection with traffic and pedestrian stops, but can occur in other contexts.  Challenges to the practice of racial profiling are generally brought pursuant to 42 U.S.C.A. § 1983 or other federal civil rights laws.  State civil rights laws may also be invoked generally, in terms of a challenge to racial profiling.

71 Elizabeth O'Connor Tomlinson, *Causes of Action* § 1, at 765 (2d 2016).

Appellants' argument is not supported by relevant authority or cogent argument and was not raised below, we decline to consider it.

## *CONCLUSION*

[¶28]   When analyzing the constitutionality of searches and seizures under the Wyoming Constitution or the Fourth Amendment, we have rejected the adoption of a bright-line rule and have instead required a fact-specific reasonableness inquiry, which includes objectively analyzing the officer's conduct to determine if he was justified when he initiated the stop.  The traffic stop for an expired registration was objectively justified and was reasonable at its inception.  It did not violate Article 1, § 4 of the Wyoming Constitution or the Fourth Amendment.  The district court did not err in denying Appellants' motion to suppress.  We affirm.