**Robert Dean PELLATZ, a/k/a Robert D. Pellatz, a/k/a Robert Pellatz, a/k/a Bob Pellatz, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 85–107.**

Supreme Court of Wyoming.

Jan. 2, 1986.

Leonard Munker, State Public Defender, Cheyenne, Gerald M. Gallivan, Wyo. Defender Aid Program, Laramie, John C. Smiley, Student Intern, Wyo. Defender Aid Program, for appellant (defendant).

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Senior Asst. Atty. Gen., Darold W. Killmer, Legal Intern, for appellee (plaintiff).

Before THOMAS, C.J., and ROONEY *, BROWN, CARDINE and URBIGKIT, JJ.

URBIGKIT, Justice.

This is a purloined-backhoe case. Appellant, Robert Dean Pellatz (Pellatz) was convicted in a jury trial of larceny theft, and brings the appeal from the claimed unconstitutional intrusion without a search warrant, wherein the law enforcement officer determined ownership of the missing equipment by directing a mechanic to climb upon a lowboy semi truck trailer parked in a public parking lot, to locate identification information. The case comes to this court on appeal on the inquiry as to whether the activity of the law enforcement officer was constitutionally impermissible in arranging, without first securing a search warrant, to identify a backhoe, on a trailer in plain sight, as the suspected stolen property.

We will affirm.

Pellatz was arrested under an outstanding warrant for a bad-check charge, which is unrelated to this case, as he was driving a semi truck with trailer south on the Interstate highway from Cheyenne, Wyoming, toward Fort Collins, Colorado. On the open lowboy trailer which he was pulling was a Case Caterpillar-type backhoe. Pellatz was taken to jail, and the truck and trailer first parked after arrest on the Interstate highway was moved by Sheriff personnel to a nearby truck stop and then taken by an acquaintance of Pellatz to the parking lot at the Bunkhouse Bar, a public bar facility some 15 miles west of Cheyenne.

The backhoe had been removed by Pellatz and a woman driver from an oil-well drilling site in Niobrara County, more than 100 miles north from Cheyenne, and then taken sometime before the arrest incident to the Bunkhouse Bar, where Pellatz had attempted to remove identification data. At the time of the arrest of Pellatz, the Laramie County (Cheyenne) Sheriff's office was not aware of the theft of the backhoe in Niobrara County. However, before his release could be accomplished on the unrelated warrant, information came to the Laramie County Sheriff's office about the theft, with a suggestion that Pellatz might be involved.

This was not a lucky time for him, as evidenced by the accidental arrest on the unrelated charge as he was attempting to move the backhoe out of Wyoming, but, additionally, because the equipment vendor, Wilson Equipment and Supply Company, had installed a special vendor sticker to the equipment for their separate identification. The Sheriff's officer, recalling the equipment which had been on the trailer when Pellatz was arrested, secured a Wilson Equipment mechanic for assistance and went to the Bunkhouse Bar "to examine the equipment." The two men found the tractor-trailer unit in the public parking area of the Bunkhouse Bar, with the backhoe located on the trailer in clear sight.

The mechanic, Marvin Graham, proceeded to try to find identification numbers on the equipment, and discovered that most of the identification information had either been removed by attempting to erase the stamped numbers or by extricating identification tags. After stepping upon the trailer and crawling under the backhoe, he found an unremoved, stamped transaxle number and the Wilson Equipment and Supply Company product identification number which identified the unit and permitted ownership determination.

Based on this identification of the equipment as the missing Niobrara County backhoe, there followed a search warrant, rearrest, trial and conviction. Pellatz made a timely motion to suppress all evidence resulting from the identification examination on the lowboy trailer, on the basis of a contended warrantless, illegal search, and the motion was denied by the trial court.

* Retired November 30, 1985.

We will affirm the decision and conviction.

In affirming the trial court's rejection of the motion to suppress, and consequently approving the resulting conviction, this court will first determine that no "search" of the trailer, which was the property of the accused, was ever made. The activity which is subject to the constitutional inquiry consisted of the mechanic climbing on the trailer only to inspect the backhoe in order to check for ownership identification of the potentially stolen property. No real property trespass occurred, since the parking area at the Bunkhouse Bar afforded public access.

The issue we reach is whether the activity of the Wilson mechanic involved in examining the Case backhoe, as undertaken at the direction of the investigative officer, violated constitutional rights of Pellatz as guaranteed by the Fourth Amendment to the United States Constitution and Art. 1, § 4 of the Wyoming Constitution.

In all contended impermissible-search questions, the court must first consider the threshold question of whether a search, in the constitutional sense, occurred at all, before reaching the issue as to whether or not the search was unreasonable. *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); *McCutcheon v. State*, Wyo., 604 P.2d 537 (1979).

That case and comparable decisions are decisive on the issue, and consequently this court will not undertake further pursuit of the second-phase improper or unjustified search legal inquiry.[1] *United States v. Polk*, 433 F.2d 644 (5th Cir.1970); 68 Am. Jur.2d, Searches and Seizures § 88, pp. 678, 742.

Prior to entry on the trailer, both the deputy sheriff and the mechanic were where they had a right to be. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, reh. denied 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971); *McCutcheon v. State*, supra.

"* * * Thus, so long as their initial intrusion is justified, the police while within the legitimate scope of their entry may search the premises with their eyes." *Ortega v. State*, Wyo., 669 P.2d 935, 941 (1983).

Standing there in the public parking lot with the Case backhoe in clear and unrestricted view, what were the alternatives of the law-enforcement officer in his investigation? Although a search case after arrest, the rule of *Alcala v. State*, Wyo., 487 P.2d 448 (1971), cert. denied 405 U.S. 997, 92 S.Ct. 1259, 31 L.Ed.2d 466, reh. denied 406 U.S. 911, 92 S.Ct. 1613, 31 L.Ed.2d 823 (1972), is not inapposite.

The officer, in this case, in making his observation, did not infringe physically upon the structured integrity of any vehicle. See *United States v. Amuny*, 767 F.2d 1113 (5th Cir.), reh. denied 775 F.2d 301 (1985). At that time and place, the investigating police officer was faced with three responsibilities as he looked at the Case backhoe in front of him on the trailer.

(1) He had a duty to Pellatz, then in jail, to either prove or disprove the suspicion of grand larceny. *Brady v. State of Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *People v. Thiret*, Colo., 685 P.2d 193 (1984).

(2) Likewise, he had a duty to Steve's Roustabout, the owner, whose backhoe had been stolen, to locate, protect and return a significantly valuable construction machine. *State v. George*, 32 Wyo. 223, 231 P. 683 (1924).

(3) Finally, he had a duty to the Sheriff's office, the county and the state of Wyoming, to complete his investigation by identification of that equipment, or conversely to determine that it was not the equipment and then to pursue alternative directions for his investigation.[2] *In re Petition of*

---

1. This is not to suggest that probable cause did not exist for the warrantless search in the context of *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). See also

*California v. Carney*, —— U.S. ——, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).

2. "* * * Blackstone says (1 Com. 344): 'He may and is bound ex officio to pursue and

*Olson,* 211 Minn. 114, 300 N.W. 398 (1941); 80 C.J.S. Sheriffs and Constables § 42, p. 211.

What he did was to determine whether it was or was not, and all three duties within his job responsibility were consequently satisfied with the knowledge gained.

Justice Harlan, in a concurring opinion in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), articulated the most frequently used standard by which Fourth Amendment claims are measured. The requirement is twofold. First, a person must have exhibited an actual subjective expectation of privacy. Second, the expectation must be one that society is prepared to recognize as reasonable. *Katz v. United States,* supra, 389 U.S. at 361, 88 S.Ct. at 516.

■ The Wyoming Supreme Court has previously adopted standards for determining when an individual possesses a reasonable expectation of privacy. The factors to be considered include: (1) the precautions taken in order to maintain one's privacy; (2) the likely intent of the drafters of the United States and Wyoming Constitutions; (3) the property rights a claimant possesses in the invaded area; (4) the legitimacy of the individual's possession of or presence in the property which was searched or seized. *Parkhurst v. State,* Wyo., 628 P.2d 1369, cert. denied 454 U.S. 899, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981); *Ortega v. State,* supra.

■ Applying the factors which this court adopted in Parkhurst and Ortega to the facts in this case, it is clear to this court that there was no search of the backhoe in a constitutional context. First, appellant Pellatz took no precautions in order to maintain his privacy in the trailer or the backhoe. Both were in plain view. Both were intransit on Interstate 25, which would have enabled any curious passerby to see the stolen backhoe. Even after Pellatz was arrested, the backhoe and the

trailer were parked in a place to which the public had access, both when the truck, trailer and backhoe were parked at the truck stop and later when the truck, trailer and backhoe were parked at the Bunkhouse Bar parking lot. These parking lots may be likened to open fields, and "open fields do not provide the setting for those intimate activities that the [Fourth] Amendment is intended to shelter from government interference or surveillance." *Oliver v. United States,* supra, 104 S.Ct. at 1741. The subject was discussed by Justice Blume in *State v. George,* supra, 61 years ago, with comments that remain equally valid today:

"'The special protection accorded by the Fourth Amendment to the people in their "persons, houses, papers and effects," is not extended to the open fields. The distinction between the latter and the house is as old as the common law. 4 Bl.Comm. 223, 225, 226.'" 231 P. at 688, quoting from *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924).

Appellant contends that neither the officer nor Mr. Graham, the Wilson Equipment and Supply Company employee, had any right to climb on the trailer to examine the backhoe for vehicle identification, or, more accurately stated, that the activity constitutionally tainted the information obtained when prosecution for theft thereafter followed. The United States Court of Appeals for the Fifth Circuit, in *United States v. Polk,* supra, found otherwise. That court held, in regard to the issue, that there can be no reasonable expectation of privacy with respect to the identity of a vehicle identification number:

"* * * Opening the car door, looking under the hood, or crawling under the car to inspect the rear axle does not independently bring an inspection of the

take all traitors, murderers, felons and other misdoers and to commit them to gaol for safe custody. He is also to defend his county against any of the king's enemies when they come into the land; and for this purpose as

well as for keeping the peace and pursuing felons, he may command all of the people of his county to attend him.'" *Maxwell v. Andrew County,* 347 Mo. 156, 146 S.W.2d 621, 625 (1940).

VIN within the scope of the Fourth Amendment." 433 F.2d at 647.

Even if the activity of the mechanic constituted a technical trespass, such conduct would still not necessarily be a Fourth Amendment search when no expectation of privacy is disappointed. *Edwards v. State,* 38 Wis.2d 332, 156 N.W.2d 397 (1968).

The case of *United States v. Amuny,* supra, is strongly presented by appellant in argument in support of his position. The factual situation is not comparable, and would afford a different "view" if the airplane itself had been stolen and the investigation conducted to determine its identification. In Amuny, the officer climbed on an airplane to look in the front window for contraband. Here, the backhoe was in clear view, with the only question being that identification.

The court said in *Amuny:*

"We agree with the government that to determine whether Agent Castro was in a place where he had a lawful right to be we must focus upon whether Castro's conduct invaded the appellant's legitimate expectations of privacy *in* the aircraft." (Emphasis added.) 767 F.2d at 1126.

The present case involves looking at and not in, and the object was open and notoriously available for inspection. See special concurrence of Chief Justice Thomas in *Hunter v. State,* Wyo., 704 P.2d 713, 718 (1985). *Oliver v. United States,* supra; *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974).

In holding that no constitutionally impermissive search occurred in the circumstance in the investigative effort to identify potentially stolen property which is open to public view, this court will not pursue the alternative issue of standing. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), reh. denied 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979); *Williams v. State,* Wyo., 557 P.2d 135 (1976). The contested police activity consisted of examination for identification as differentiated from search and seizure for evidence. Cf. "plain view" cases: *Kish v.*

*State,* Wyo., 642 P.2d 453 (1982), and *McCutcheon v. State,* supra.

Likewise, this opinion will not be extended to warrantless-search cases with the attendant rules which are involved as incident to arrest or otherwise justified or unjustified in the particular search conditions. See *Patterson v. State,* Wyo., 691 P.2d 253 (1984), cert. denied in *Spoon v. Wyoming,* — U.S. —, 105 S.Ct. 2048, 85 L.Ed.2d 311 (1985); *Parkhurst v. State,* supra; *Alcala v. State,* supra. *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975), reh. denied 423 U.S. 1081, 96 S.Ct. 869, 47 L.Ed.2d 91 (1976); *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Coolidge v. New Hampshire,* supra; *Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); *Jessee v. State,* Wyo., 640 P.2d 56 (1982).

We hold that the identification was constitutionally permissible.

Affirmed.