2009 WY 152

**Shane Cody WALLACE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–09–0060.

Supreme Court of Wyoming.

Dec. 14, 2009.

Representing Appellant: Diane Lozano, State Public Defender; Tina Kerin, Appellate Counsel; and Kirk A. Morgan, Senior Assistant Appellate Counsel, Wyoming Public Defender Program.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Graham M. Smith, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Shane Cody Wallace appeals the district court's finding that a deputy did not lack reasonable suspicion to detain him and his vehicle for a dog sniff. Arguing only under the United States Constitution, Wallace contends that the deputy impermissibly expanded the scope of an otherwise lawful stop by requesting the narcotic detection dog. We affirm.

## ISSUE

[¶ 2] Wallace states the single issue as follows:

Mr. Wallace's Fourth Amendment Rights were violated when law enforcement extended a traffic stop without reasonable suspicion.

The State posits the issue this way:

Thirteen minutes is not an unreasonable amount of time to write two traffic tickets.

## FACTS

[¶ 3] On March 31, 2008, just before midnight, Campbell County Deputy Sheriff Stinson observed that Wallace's vehicle had a broken taillight, and subsequently stopped the vehicle. As he walked to the vehicle, Deputy Stinson also noticed that Wallace's rear window was obscured by snow.

[¶ 4] The deputy contacted Wallace, who was "in a hurry to receive his ticket and

leave." In fact, Wallace requested that he be issued a ticket quickly so that he could be on his way. After requesting the appropriate documents, Deputy Stinson returned to his car, contacted dispatch, and learned that both Wallace and his passenger had prior drug contacts. Based on those circumstances, the deputy contacted his colleague, Deputy Spencer, and requested he bring his drug dog to the scene. At that point, Deputy Stinson began writing Wallace a citation for the obscured rear window and a warning ticket for the broken taillight.

[¶ 5] While Deputy Stinson wrote the citations, Deputy Spencer arrived with his drug dog. Approximately <u>seventeen minutes</u> into the stop, the drug dog alerted during an exterior sniff of Wallace's vehicle. A subsequent pat down search of Wallace produced marijuana.

[¶ 6] After being taken into custody, Wallace was charged with one count of possession of marijuana and subsequently filed a motion to suppress. The district court denied the motion, finding that the deputy had reasonable suspicion to detain Wallace. The court listed two circumstances of reasonable suspicion upon which the deputy relied: 1) both occupants of the vehicle had histories of drug contacts, and 2) the driver of the vehicle appeared unnaturally anxious and/or nervous to receive his ticket(s) and be on his way.

[¶ 7] Wallace entered a conditional guilty plea to the possession charge. The district court sentenced him to two to four years, suspended in favor of five years of supervised probation. This appeal followed.

## STANDARD OF REVIEW

██ [¶ 8] We recently stated in *Latta v. State*, 2009 WY 35, ¶ 10, 202 P.3d 1069, 1071 (2009):

In reviewing a trial court's ruling on a motion to suppress evidence, we do not interfere with the trial court's findings of fact unless the findings are clearly erroneous. We view the evidence in the light most favorable to the trial court's determination because the trial court has an opportunity at the evidentiary hearing to assess the credibility of the witnesses, weigh

the evidence, and make the necessary inferences, deductions, and conclusions. The constitutionality of a particular search is a question of law that we review *de novo*. *Shaw v. State*, 2009 WY 18, ¶ 19, 201 P.3d 1108 (2009).

## DISCUSSION

██ [¶ 9] Wallace claims on appeal that his right to be free from unreasonable searches and seizures, protected by the Fourth Amendment to the United States Constitution, was violated when Deputy Stinson unlawfully extended the scope and the duration of the initial traffic stop without having a reasonable, articulable suspicion that a crime was occurring. Wallace argues that the facts of his case do not support a finding of reasonable, articulable suspicion necessary to expand both the scope and the duration of the stop.

[¶ 10] While Wallace focuses his argument on reasonable suspicion, the State centers its argument around a United States Supreme Court case, *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005), because, according to the State, the initial stop was not prolonged beyond the time reasonably required to complete the issuance of the citations and under *Caballes*, an exterior sniff of a vehicle by a drug dog does not constitute a search. The State argues that because it took only <u>thirteen minutes</u> for the deputy to write two traffic citations, during which time the drug dog arrived and was deployed, the duration of the traffic stop was not unreasonably extended. The State submits that this time period is within the typical length permitted.

██ [¶ 11] It is a well-accepted tenet of our jurisprudence that we may sustain the decision of the lower tribunal on any basis found in the record. *Van Order v. State*, 600 P.2d 1056, 1058 (Wyo.1979). Although the district court found reasonable suspicion in this case, and rather than address Wallace's argument regarding reasonable suspicion, we will affirm this case on the basis argued by the State—that the initial stop was not prolonged beyond the time reasonably required

by the officer to write the citations, and that an exterior dog sniff does not constitute a search.

[¶ 12] The first clause of the Fourth Amendment provides that "... the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" United States Const. amend. IV. The protection against unreasonable seizures "extend[s] to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). Pursuant to *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer may make a limited investigatory stop in the absence of probable cause if the officer has an articulable, reasonable suspicion, based upon the totality of the circumstances, that the suspect is involved in criminal activity. Under those same *Terry* principles, a court must determine whether the detention was reasonable by applying a two-part analysis. First, this Court considers whether the initial stop was justified, and secondly, we determine whether the officer's actions during the detention were "reasonably related in scope to the circumstances that justified the interference in the first instance." *Damato v. State*, 2003 WY 13, ¶ 9, 64 P.3d 700, 705 (2003) (citing *Wilson v. State*, 874 P.2d 215, 223 (Wyo.1994)).

[¶ 13] Here, Wallace does not challenge the reasonableness of the initial stop. Regarding the initial stop, we have stated:

> During a routine traffic stop, a law enforcement officer may request a driver's license, proof of insurance and vehicle registration, run a computer check, and issue a citation. *Campbell*, ¶ 12, 97 P.3d at 785; *Damato*, ¶ 13, 64 P.3d at 706 (citing *Burgos–Seberos v. State*, 969 P.2d 1131, 1133 (Wyo.1998); *United States v. Elliott*, 107 F.3d 810, 813 (10th Cir.1997)). Generally, the driver must be allowed to proceed on his way without further delay once the officer determines the driver has a valid driver's license and is entitled to operate the vehicle. *Damato*, ¶ 13, 64 P.3d at 706;

see also *United States v. Wood*, 106 F.3d 942, 945 (10th Cir.1997); *Barch*, ¶ 9, 92 P.3d at 832. In the absence of consent, an officer may expand the investigative detention beyond the purpose of the initial stop only if there exists an " 'objectively reasonable and articulable suspicion' that criminal activity has occurred or is occurring." *Damato*, ¶ 13, 64 P.3d at 706 (quoting *United States v. Williams*, 271 F.3d 1262, 1267 (10th Cir.2001)).

*Garvin v. State*, 2007 WY 190, ¶ 14, 172 P.3d 725, 729 (2007).

[¶ 14] This Court has also recognized that

[T]he basis for and the circumstances surrounding the stop, rather than an arbitrary time limit, govern a stop's permissible length. Hence, a stop's duration and whether it was unreasonably extended is analyzed in terms of the length necessary for its legitimate purpose. *United States v. Guzman*, 864 F.2d 1512, 1519 fn. 8 (1988) (citing *United States v. Sharpe*, 470 U.S. 675, [685–87,] 105 S.Ct. 1568, [1574–76,] 84 L.Ed.2d 605, [614–16] (1985)). In assessing the scope of the intrusion, we must examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly and without undue delay in detaining a defendant. *Wilson v. State*, 874 P.2d 215 at 218, 223–224 (Wyo.1994) (quoting *United States v. Sharpe*, 470 U.S. 675, [685–87,] 105 S.Ct. 1568, [1574–76,] 84 L.Ed.2d 605, [614–16] (1985)).

*Lindsay v. State*, 2005 WY 34, ¶ 19, 108 P.3d 852, 857 (2005).

[¶ 15] A United States Supreme Court case is also relative to our analysis. In *Caballes*, the Court held the Fourth Amendment does not require a reasonable, articulable suspicion to justify using a drug-detection dog to sniff the outside of a vehicle during a legitimate traffic stop as long as the duration of the stop is not extended. The Court concluded that a dog sniff of a car's exterior did not compromise a legitimate privacy interest and, therefore, was not a search.[1] *Id.* 543 U.S. at 407, 125 S.Ct. 834.

---

1. Prior to *Caballes*, in *Morgan v. State*, 2004 WY 95, ¶¶ 10–18, 95 P.3d 802, 805–08 (2004), this

Said another way, the Fourth Amendment does not prohibit police from using a narcotics-detection dog during a lawful traffic stop, even in the complete absence of reasonable suspicion, so long as the canine sweep does not extend the length of the traffic stop. *Id.* 543 U.S. at 409–10, 125 S.Ct. 834. The use of a drug sniffing dog does not enlarge the scope of a routine traffic stop into a drug investigation.

[¶ 16] Here, Wallace does not dispute the validity of the initial stop and, typically, that leads us to the second prong of the analysis under *Terry* (i.e., were the officer's actions during the detention reasonably related in scope to the circumstances that justified the interference in the first instance). *Damato,* ¶ 9, 64 P.3d at 705. However, in this case, we need not look beyond the initial stop because Wallace admits that it was lawful, and also because the record is clear that no improprieties occurred so as to violate Wallace's constitutional rights. The record shows precisely how many minutes Wallace had been detained before the drug dog alerted to drugs at the scene—just over seventeen minutes elapsed from the time Deputy Stinson stopped the vehicle until the dog alerted. The district court was persuaded that the deputy did not drag his feet in order to allow for the canine unit to arrive. In fact, the district court concluded that the brief period of detention lasted no longer than was necessary to achieve the purpose of the stop, inasmuch as the sniff was concluded before the deputy had finished issuing the citations. We agree.

[¶ 17] We have examined the record before us and find nothing to indicate that the duration of Wallace's detention was so prolonged as to be unjustified. The deputy appears to have pursued his investigation in a conscientious and reasonable manner, while focusing on the matter at hand. He made a radio transmission to dispatch, awaited information, and then contacted the canine unit. His encounter with Wallace was focused, and he set out directly to complete the paperwork involved in issuing both a citation and a warning. In fact, the entire encounter—

from the initial stop to the dog's alert— lasted approximately seventeen minutes. At the hearing on Wallace's *Motion to Suppress,* Deputy Stinson testified that it normally takes him 8–10 minutes to fill out a citation ticket, and at least 3–5 minutes to fill out a warning ticket. Here, he had to issue both a citation and a warning. Regarding the citation ticket, the deputy said, "It takes a while [to write a citation]. It is a pretty involved piece of paper if you get all your information on there. It is a pretty lengthy document." The purpose of the initial stop had not been completed before the canine unit arrived at the scene, and the dog sniff did not prolong the stop. Deputy Stinson completed his radio communications and began to write out the two tickets. He continued writing until the drug dog alerted to the vehicle. Based on the deputy's estimation that it would normally take him a total of 11–15 minutes to fill out both a citation and a warning, it was reasonable for him to still be in the process of writing the tickets when the dog alerted.

[¶ 18] Considering both the length of the continued detention and the investigative methods employed therein, we have determined that the duration of the extended detention was reasonable, and the use of the drug detection dog during the lawful detention did not violate any constitutionally protected right. *See Caballes, supra,* 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842. The dog sniff occurred while Wallace was being lawfully detained. After the dog alerted to the presence of narcotics, the officers had probable cause to search the vehicle. Consequently, the trial court did not err by denying Wallace's motion to suppress the evidence.

### CONCLUSION

[¶ 19] We affirm the district court's denial of Wallace's motion to suppress. We hold that the initial stop was not prolonged by the exterior dog sniff. Affirmed.

---

Court also concluded that a dog sniff is not a search entitled to protection under the Fourth

Amendment to the United States Constitution.