2011 WY 136

**Dana Yvette DICKEY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–11–0062.**

Supreme Court of Wyoming.

Sept. 28, 2011.

Representing Appellant: Diane Lozano, State Public Defender; Tina N. Olson, Appellant Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel, Wyoming Public Defender Program.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jenny L. Craig, Senior Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1]  Appellant Dana Yvette Dickey entered a conditional guilty plea to one count of possession of a controlled substance, a felony. She reserved the right to appeal the district court's denial of her motion to suppress the methamphetamine found in her purse following a traffic stop.  In this appeal, Dickey claims the evidence should have been suppressed as the fruit of a constitutionally infirm detention under the Fourth Amendment to the United States Constitution.  We disagree, and affirm the district court's suppression ruling.

## ISSUE

[¶ 2]  Dickey offers the following issue for our consideration:

Did the district court err when it failed to suppress evidence obtained in violation of [her] Fourth Amendment rights after law enforcement extended a traffic stop beyond the time reasonably required to complete the issuance of the citations, without reasonable suspicion of criminal activity? [1]

## FACTS

[¶ 3]  On September 20, 2009, Deputies Robert Proffitt and Trevor Budd of the Campbell County Sheriff's Department stopped a pickup truck driven by Dickey after observing it cross the center line on three occasions.  Deputy Proffitt made con-

1.  Dickey has opted not to challenge the legality of her detention under the Wyoming Constitution.

tact with Dickey, whom he knew from prior contacts, while Deputy Budd spoke with the passenger. After gathering the appropriate documents from Dickey and her passenger, the deputies returned to their patrol car.

[¶ 4] Deputy Proffitt then contacted dispatch to run a check on Dickey and her passenger. While awaiting a response from dispatch, the deputies discussed their prior drug-related encounters with Dickey and her family members. Shortly thereafter, dispatch reported that Dickey and her passenger had no outstanding warrants, although both had a history of contacts with law enforcement regarding controlled substances. At that point, knowing that the sheriff's department did not have a canine unit on duty, Deputy Proffitt called the Gillette Police Department and requested that Officer Greg Brothers bring his drug dog Eddy to the scene.

[¶ 5] Deputy Proffitt then began writing a warning citation for Dickey's failure to maintain a single lane of travel. Before Deputy Proffitt issued the citation, Officer Brothers arrived with his drug dog and conducted an exterior sniff of the truck. Approximately thirteen and one-half minutes into the stop, the dog alerted to the presence of controlled substances. Officer Brothers searched the truck's interior and discovered a purse underneath the passenger seat, which contained a syringe loaded with methamphetamine and a copy of Dickey's birth certificate. When questioned, the passenger reported that Dickey handed her the purse with directions to place it under the seat.

[¶ 6] Dickey was taken into custody and charged with possession of a controlled substance, her third or subsequent such offense, in violation of Wyo. Stat. Ann. § 35–7–1031(c)(i)(C) (LexisNexis 2011).[2] She filed a motion to suppress the methamphetamine found in her purse, claiming it was the product of an unlawful detention. Dickey and the State later agreed that an evidentiary hearing would not be necessary to resolve the suppression motion and filed a stipulation to

that effect. They also stipulated that the district court could rely on the relevant pleadings, a video of the traffic stop, as recorded by the camera in Deputy Proffitt's patrol car, and an audio recording of Dickey's preliminary hearing, during which Deputy Proffitt testified, in deciding the merits of her motion. After considering that information, the district court denied the motion. The district court rejected Dickey's contention that the deputies had improperly extended the duration of the traffic stop to enable the dog sniff to occur. The district court determined that the canine unit arrived within the time it took Deputy Proffitt to complete his investigation and prepare the warning citation, and that the amount of time taken to complete the citation was not unreasonable.

[¶ 7] Thereafter, Dickey entered a conditional guilty plea to the possession charge, reserving the right to appeal the district court's suppression ruling. The district court sentenced her to eighteen to thirty-six months, which it suspended in favor of four years of supervised probation. This appeal followed.

## STANDARD OF REVIEW

[¶ 8] When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the district court and defer to its factual findings unless they are clearly erroneous. We review *de novo* the ultimate determination regarding the constitutionality of a particular search or seizure. *Wallace v. State*, 2009 WY 152, ¶ 8, 221 P.3d 967, 969 (Wyo.2009); *Garvin v. State*, 2007 WY 190, ¶ 10, 172 P.3d 725, 728 (Wyo.2007).

## DISCUSSION

[¶ 9] The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. A routine traffic stop constitutes a seizure within the meaning of the Fourth Amendment "even though the purpose of the stop is

---

**2.** Generally, possession of a controlled substance in the amount discovered in this case is a misdemeanor offense punishable by imprisonment up to twelve months and/or a fine of not more than $1,000.00. However, a third or subsequent offense elevates the crime to a felony level offense, thereby subjecting the defendant to a maximum prison term of five years and a fine of $5,000.00.

limited and the resulting detention quite brief." *Damato v. State,* 2003 WY 13, ¶ 9, 64 P.3d 700, 704 (Wyo.2003) (quoting *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979)). The reasonableness of a traffic stop is determined by applying a two-part analysis: (1) whether the initial stop was justified; and (2) whether the officer's actions during the detention were "reasonably related in scope to the circumstances that justified the interference in the first instance." *Garvin,* ¶ 13, 172 P.3d at 728–29 (citing *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)); *see also Wallace,* ¶ 12, 221 P.3d at 970; *Damato,* ¶ 9, 64 P.3d at 705.

■ [¶ 10] With respect to the second prong of the analysis, this Court has stated:

> During a routine traffic stop, a law enforcement officer may request a driver's license, proof of insurance and vehicle registration, run a computer check, and issue a citation. Generally, the driver must be allowed to proceed on his way without further delay once the officer determines the driver has a valid driver's license and is entitled to operate the vehicle. In the absence of consent, an officer may expand the investigative detention beyond the purpose of the initial stop only if there exists an objectively reasonable and articulable suspicion that criminal activity has occurred or is occurring.

*Garvin,* ¶ 14, 172 P.3d at 729 (internal citations and quotation marks omitted). We have never imposed an arbitrary time limit when determining the permissible length of a traffic stop. *Lindsay v. State,* 2005 WY 34, ¶ 19, 108 P.3d 852, 857 (Wyo.2005). Instead, we examine whether law enforcement "diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly and without undue delay in detaining a defendant." *Id.*

■ [¶ 11] In this case, Dickey does not dispute the validity of the initial traffic stop. Rather, her complaint concerns the duration of the stop and the reasonableness of her detention. Dickey acknowledges that

the Fourth Amendment does not prohibit a dog sniff of the exterior of a vehicle during a lawful traffic stop. *See Illinois v. Caballes,* 543 U.S. 405, 407–10, 125 S.Ct. 834, 837–38, 160 L.Ed.2d 842 (2005); *Wallace,* ¶ 15, 221 P.3d at 970–71. However, she contends the deputies impermissibly prolonged the stop beyond the time necessary to issue the warning citation in order to enable the drug-detection dog to conduct a free air sniff of the vehicle she was driving.

[¶ 12] Dickey's claim is based on the premise that a five-minute delay occurred between the time Deputy Proffitt completed the warning citation and the time the canine unit arrived at the scene. The only evidence Dickey can muster to support the alleged five-minute delay is Deputy Proffitt's preliminary hearing testimony. However, Deputy Proffitt's testimony regarding the timing of the canine unit's arrival and the completion of the warning citation is at best equivocal and is inconsistent with his affidavit of probable cause and the video of the traffic stop. In the affidavit, Deputy Proffitt noted that Officer Brothers and his dog Eddy arrived at the scene before he completed the warning. Furthermore, the video of the traffic stop, which is the best evidence of what actually transpired during the stop, amply demonstrates that Deputy Proffitt was still investigating and gathering information directly related to the traffic stop immediately before the canine unit arrived. Although the video does not visually confirm when the warning citation was completed, Deputy Proffitt can be heard speaking with dispatch about the vehicle's ownership approximately sixteen seconds before K–9 Eddy began barking, signifying his arrival at the scene.[3] After examining the entire record, we are unable to conclude that Deputy Proffitt impermissibly stalled issuing the citation in order to allow for the arrival of the canine unit, as Dickey maintains.

[¶ 13] In addition, we find nothing in the record indicating that the duration of Dickey's detention was so prolonged as to be unjustified. The record reveals that Deputy

---

**3.** Deputy Proffitt contacted dispatch to verify ownership of the truck because Dickey was un- able to produce the vehicle's registration.

Proffitt engaged in a conscientious and reasonable investigation related to the purpose of the initial stop. He contacted dispatch, awaited information, and then contacted the canine unit. His encounter with Dickey was focused, and he promptly set out to complete the warning citation. The canine unit arrived at the scene before the citation had been issued, and the dog sniff did not prolong the stop to any extent. The entire encounter—from the initial stop to the dog's alert—lasted approximately thirteen and one-half minutes.

[¶ 14] Considering the length of the detention in conjunction with the investigative methods employed therein, we have no trouble concluding that Dickey's detention lasted no longer than necessary to effectuate the purpose of the stop, and that its duration was reasonable. The dog sniff occurred while Dickey was being lawfully detained and, as Dickey has acknowledged, the use of the drug dog during her lawful detention did not violate any constitutionally protected right. After the drug dog alerted to the presence of controlled substances, Officer Brothers and the deputies had probable cause to search the vehicle. Consequently, the district court did not err by denying Dickey's motion to suppress the methamphetamine evidence.

[¶ 15] Affirmed.