# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 58

APRIL TERM, A.D. 2023
June 7, 2023

MARIA ANNE JOSEPH,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

S-22-0250

JACKSON ELLIOTT TARZIA,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

S-22-0282

*No. S-22-0250*
*Appeal from the District Court of Carbon County*
*The Honorable Dawnessa A. Snyder, Judge*

*No. S-22-0282*
*Appeal from the District Court of Albany County*
*The Honorable Misha E. Westby*

*Representing Appellants:*

H. Michael Bennett, Corthell and King Law Office, P.C., Laramie, Wyoming.

*Representing Appellee:*

Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General, Donovan Burton Assistant Attorney General. Argument by Mr. Burton.

**Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.**

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    In these appeals, consolidated because they present the same legal question, Maria Anne Joseph and Jackson Elliott Tarzia (collectively Appellants) appeal the denials of their separate motions to suppress. They contend the exterior canine sniffs of their vehicles were done without probable cause and thus violated the Wyoming Constitution. We affirm.

## *ISSUE*

[¶2]    These appeals present the question of whether the Wyoming Constitution requires that an exterior canine sniff of a vehicle be supported by probable cause.

## *FACTS*

### Appeal No. S-22-0250 Maria Joseph

[¶3]    On the morning of October 11, 2021, Wyoming State Trooper Nicholas Haller was patrolling Interstate 80 in Carbon County when he observed a silver Kia SUV cross the highway centerline four times. He stopped the vehicle and identified the driver as Ms. Joseph. He told her why he had pulled her over and advised that he was going to give her a warning.

[¶4]    The first thing Ms. Joseph said to Trooper Haller was that she was just trying to go home. Trooper Haller testified that through his training he understood this to be a deflecting statement made to draw attention away from the individual. He also observed luggage in the rear of the vehicle covered with a blanket. He asked Ms. Joseph about her travel plans, and she informed him she was coming from Spokane, Washington, was on her way to Canton, Ohio, and from there she was going to Elkins, West Virginia. Ms. Joseph explained that she was speaking at a vigil for her deceased son and was also speaking at other vigils in Arizona and maybe Nevada. She also explained that the items in the vehicle were her deceased son's property that she was taking home to Elkins, West Virginia.

[¶5]    Ms. Joseph did not have her vehicle registration, and Trooper Haller thus asked her to join him in his patrol car while he checked the vehicle records. Trooper Haller described Ms. Joseph as "very talkative" and "very nervous," which he found unusual because he had already told her he was only issuing a warning. Additionally, during their conversation in the patrol car, she told him her son had been deceased for fifteen years, which he found odd because she had earlier told him she was bringing his belongings home. At about six minutes into the stop, Trooper Haller determined he had cause to detain Ms. Joseph and called for a canine. He testified:

1

A. With the totality of the circumstances of everything I observed up to that point I believed that there was criminal activity afoot.

Q. And so what things did you take into consideration?

A. Her travel plans, coming from a known source state traveling eastbound on the interstate, in addition to her overly – over nervous behavior, the talkative behavior, and also the time frame difference from when she said the purpose of her trip was to bring her son's stuff back home, when I later found out that her son had been deceased for 15 years.

Q. And how about the contents of the vehicle, was that a consideration as well?

A. That as well, yes, ma'am, the covered luggage in the back.

Q. And why was that something that you took note of?

A. Because it's not something that I see on, I guess, you would say, a normal traffic stop. You don't typically see an entire back end of a vehicle covered under a blanket.

[¶6] About forty minutes later, Deputy Casey Lehr of the Carbon County Sheriff's Office arrived with his canine, Zeus, and ran him around the exterior of Ms. Joseph's vehicle. Zeus was trained to detect marijuana, cocaine, heroin, methamphetamine, and MDMA, and he alerted on the back of Ms. Joseph's vehicle. After Zeus alerted, Trooper Haller searched the vehicle and found four large suitcases that contained multiple vacuum-sealed packages of raw marijuana.

[¶7] Ms. Joseph was arrested, and Trooper Haller met with a Wyoming Department of Criminal Investigation (DCI) agent in Rawlins, Wyoming for a more thorough search of her vehicle. That search revealed approximately twenty-five pounds of tetrahydrocannabinol (THC) wax, two pounds of psilocybin mushrooms, and fifty-eight pounds of raw, plant-form marijuana.

[¶8] The State charged Ms. Joseph with five felonies related to the controlled substances found in her vehicle. Ms. Joseph filed a motion to suppress the evidence recovered from her vehicle, arguing the canine sniff of her vehicle's exterior was a search that violated the Wyoming Constitution because it was not supported by probable cause. The district court denied the motion, and Ms. Joseph thereafter entered a conditional plea of guilty to a single

count of possession of marijuana with intent to deliver, reserving her right to appeal the denial of her motion to suppress. The court accepted the change of plea and in accordance with the parties' agreement, it sentenced Ms. Joseph to a prison term of three to five years, suspended in favor of three years of probation. Ms. Joseph timely appealed to this Court.

**Appeal No. S-22-0282 Jackson Tarzia**

[¶9]   On August 4, 2021, Wyoming State Trooper Brandon Deckert was assigned to a canine criminal interdiction detail in the Laramie, Wyoming area. Rather than patrolling the highway, Trooper Deckert was using consensual encounters with individuals who had stopped for fuel to investigate and uncover criminal conduct. That morning he pulled into a truck stop in Albany County and observed a white 2021 Yukon Denali parked at a fuel pump. He was familiar with the vehicle model and knew it to be uncommon, and he testified that the only ones he had encountered around that time were rental vehicles. Because he suspected the vehicle to be a rental, he considered it a vehicle of interest.

[¶10]  Trooper Deckert pulled into the opposite side of the gas island from the Denali so that he was essentially parallel to the Denali but at a bit of an angle so his dash camera could catch the view. He exited his vehicle and retrieved a squeegee to wash his windshield, at which point he saw Kevin Curtis, one of the vehicle's occupants, pumping gas. Trooper Deckert greeted Mr. Curtis and the two started a conversation about Mr. Curtis' travel. Mr. Curtis said he was headed to Ohio, that he had family there, and "we were looking at real estate." Mr. Curtis' use of the word "we" made Trooper Deckert expect someone to return from the station's interior.

[¶11]  Mr. Curtis gave a lengthy explanation of the real estate they had been looking at around the country and told Trooper Deckert it was a great time to buy real estate. About two to three minutes into their conversation, Mr. Tarzia returned to the vehicle. While Trooper Deckert had found Mr. Curtis to be relaxed and conversational, he described Mr. Tarzia as rigid and standoffish. As Trooper Deckert continued to talk with the two men, he observed inconsistencies and oddities in their travel plans and descriptions of their real estate business.

[¶12]  At one point, Trooper Deckert commented to Mr. Curtis that the Denali was a nice car, and Mr. Curtis informed him it was a rental and they had rented it in Las Vegas. Trooper Deckert asked to see the rental agreement, and as Mr. Tarzia tried to show him the contract on his cell phone, Trooper Deckert observed that he was breathing heavily and his hand shook as he held his phone. When Trooper Deckert was finally able to read the agreement, he found that the vehicle had been rented in San Francisco, which did not match anything he had been told.

[¶13]  At that point, Trooper Deckert believed the two men were engaged in criminal activity and informed them he was detaining them for further investigation. He read them

3

their rights, had them sit on his vehicle's front bumper, and called for backup. When Trooper Deckert's backup arrived, he retrieved his canine, Yeager, from the back seat of his patrol car and ran him around the exterior of the Denali. Yeager was trained to detect cocaine, methamphetamine, heroin, and marijuana, and he alerted on the right rear wheel well and door area. Trooper Deckert then searched the vehicle and found 149 vacuum-sealed bags of raw material in duffle bags, weighing a total of roughly 150 pounds.

[¶14] The State charged Mr. Tarzia with felony possession of marijuana and felony possession of marijuana with intent to deliver.[1] Mr. Tarzia moved to suppress the evidence recovered from his vehicle, arguing, like Ms. Joseph, that the canine sniff of the vehicle's exterior was a search that violated the Wyoming Constitution because it was not supported by probable cause. The district court denied the motion, and Mr. Tarzia thereafter entered a conditional plea of guilty to a single count of possession of marijuana. The court accepted the plea and sentenced Mr. Tarzia to a prison term of three to five years, suspended in favor of two years of probation. Mr. Tarzia timely appealed to this Court.

### STANDARD OF REVIEW

[¶15] Ms. Joseph and Mr. Tarzia appeal the denial of their motions to suppress under the Wyoming Constitution.

> In reviewing a denial of a motion to suppress evidence, we adopt the district court's factual findings unless those findings are clearly erroneous. *Rodriguez v. State*, 2018 WY 134, ¶ 15, 430 P.3d 766, 770 (Wyo. 2018) (citing *Jennings v. State*, 2016 WY 69, ¶ 8, 375 P.3d 788, 790 (Wyo. 2016)). We view the evidence in the light most favorable to the district court's decision because the court conducted the hearing and had the opportunity to "assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions." *Kunselman v. State*, 2008 WY 85, ¶ 9, 188 P.3d 567, 569 (Wyo. 2008) (quoting *Hembree v. State*, 2006 WY 127 ¶ 7, 143 P.3d 905, 907 (Wyo. 2006)). "On those issues where the district court has not made specific findings of fact, this Court will uphold the general ruling of the court below if supported by any reasonable view of the evidence." *Feeney v. State*, 2009 WY 67, ¶ 9, 208 P.3d 50, 53 (Wyo. 2009) (citing *Neilson v. State*, 599 P.2d 1326, 1330 (Wyo. 1979)).

*Beckwith v. State*, 2023 WY 39, ¶ 8, 527 P.3d 1270, 1272 (Wyo. 2023) (quoting *Hawken v. State*, 2022 WY 77, ¶ 12, 511 P.3d 176, 180-81 (Wyo. 2022)). "However, the underlying

---

[1] The record does not disclose the charges against Mr. Curtis or their disposition.

question of whether the search and seizure was constitutional is a question of law, which we review de novo." *Id*.

## *DISCUSSION*

[¶16] Appellants were both subjected to an extended investigative detention, Ms. Joseph following a traffic stop, and Mr. Tarzia after a consensual encounter. Under Article 1, Section 4 of the Wyoming Constitution, such detention requires "an 'objectively reasonable and articulable suspicion that criminal activity has occurred or is occurring.'" *Klomliam v. State*, 2014 WY 1, ¶ 17, 315 P.3d 665, 669 (Wyo. 2014) (quoting *Garvin v. State*, 2007 WY 190, ¶ 14, 172 P.3d 725, 729 (Wyo. 2007)). Neither Ms. Joseph nor Mr. Tarzia contends that law enforcement lacked the requisite reasonable suspicion to detain them. They instead limit their challenge to the canine sniff of their vehicles and contend that under Article 1, Section 4, the canine sniff had to be supported by probable cause.

[¶17] "A dog sniff of the exterior of a vehicle is not a search under the Fourth Amendment." *Pryce v. State*, 2020 WY 151, ¶ 36, 477 P.3d 90, 99 (Wyo. 2020) (quoting *Pier v. State*, 2019 WY 3, ¶ 31, 432 P.3d 890, 899 (Wyo. 2019)). The United States Supreme Court has reasoned that a canine sniff of a vehicle's exterior does not implicate legitimate privacy concerns because it is minimally intrusive and can reveal only the presence of contraband, an item in which an individual cannot claim a privacy interest. *Illinois v. Caballes*, 543 U.S. 405, 408-09, 125 S.Ct. 834, 837-38, 160 L.Ed.2d 842 (2005); *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *see also Wallace v. State*, 2009 WY 152, ¶ 15, 221 P.3d 967, 970-71 (Wyo. 2009); *United States v. Engles*, 481 F.3d 1243, 1245 (10th Cir. 2007). Additionally, we have recognized that an individual has no legitimate expectation of privacy in the airspace outside a vehicle. *Kern v. State*, 2020 WY 60, ¶ 10, 463 P.3d 158, 162 (Wyo. 2020) (citing *State v. Garcia*, 535 N.W.2d 124, 126 (Wis. 1995)); *see also Romo v. Champion*, 46 F.3d 1013, 1018 (10th Cir. 1995) ("[W]hen the odor of narcotics escapes from the interior of a vehicle, society does not recognize a reasonable privacy interest in the public airspace containing the incriminating odor.") (quoting *United States v. Morales–Zamora*, 914 F.2d 200, 205 (10th Cir. 1990)).

[¶18] Because a dog sniff of a vehicle's exterior is not a search under the Fourth Amendment, it "does not have to be justified by probable cause or even by reasonable suspicion." *Pryce*, 2020 WY 151, ¶ 36, 477 P.3d at 99 (quoting *Pier*, 2019 WY 3, ¶ 31, 432 P.3d at 899); *see also Kern*, 2020 WY 60, ¶ 10, 463 P.3d at 161 ("Because it is not a search, law enforcement does not need probable cause, reasonable suspicion, or consent to run a trained drug dog around vehicles in a public parking lot."). Appellants do not dispute this Fourth Amendment precedent but contend that because Article 1, Section 4 of the

Wyoming Constitution is more protective than the Fourth Amendment, it should be interpreted to require probable cause to support a canine sniff of a vehicle's exterior.[2]

[¶19]   "Although similarly worded, we have held that Article 1, Section 4 of the Wyoming Constitution provides greater protections than the Fourth Amendment in certain circumstances." *Gibson v. State*, 2019 WY 40, ¶ 12, 438 P.3d 1256, 1259 (Wyo. 2019) (citing *O'Boyle v. State*, 2005 WY 83, ¶ 30, 117 P.3d 401, 410 (Wyo. 2005)); *see also Levenson v. State*, 2022 WY 51, ¶ 18, 508 P.3d 229, 235 (Wyo. 2022). We have prescribed several factors to guide an independent analysis under the Wyoming Constitution. "Those factors include: '(1) the textual language; (2) the differences in the texts; (3) constitutional history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern.'" *Sheesley v. State*, 2019 WY 32, ¶ 15, 437 P.3d 830, 836 (Wyo. 2019) (citing *Saldana v. State*, 846 P.2d 604, 622 (Wyo. 1993) (Golden, J., concurring)). We have stressed, however, that "[l]itigants need not engage in a rigid, formulaic analysis to convince us to consider independent state constitutional grounds." *Sheesley*, 2019 WY 32, ¶ 15, 437 P.3d at 837.

> Although we agree that litigants must provide proper argument and briefing using a precise and analytically sound approach before we will consider a state constitutional claim, that requirement's purpose is to provide assistance, not to create obstacles to state constitutional analysis. We have never required litigants to, at the minimum, examine every factor identified in *Saldana v. State* to properly present a state constitutional claim.

*Id.* (cleaned up); *see also Fertig v. State*, 2006 WY 148, ¶ 16, 146 P.3d 492, 497 (Wyo. 2006) ("We note also that our analysis is not limited to the [*Saldana*] factors. They are merely a list of useful 'non-exclusive neutral criteria.'") (quoting *Almada v. State*, 994 P.2d 299, 309, n.8 (Wyo. 1999)).

---

[2] We have emphasized that "[w]hen a party raises a state constitutional claim and provides proper argument on appeal and in the trial court below, the state constitutional analysis takes primacy—that is, the claim is first analyzed under the Wyoming Constitution." *Levenson v. State*, 2022 WY 51, ¶ 18, 508 P.3d 229, 235 (Wyo. 2022) (citing *O'Boyle v. State,* 2005 WY 83, ¶ 22, 117 P.3d 401, 408 (Wyo. 2005)); *Vasquez v. State*, 990 P.2d 476, 485-86 (Wyo. 1999) (when state court analyzes state constitutional provision that has federal counterpart, state provision should be analyzed first and independently). We again emphasize the primacy of the state constitutional analysis and the need for it to be conducted separately from any federal analysis, even where the state and federal provisions may appear to require a similar analysis. *See Vasquez*, 990 P.2d at 485 (citing *People v. Belton*, 432 N.E.2d 745 (N.Y. 1982) for its recognition "that identical provisions do not mean that an independent interpretation is not warranted"); *People v. McKnight*, 446 P.3d 397, 407 (Colo. 2019) ("State courts have a freer hand in doing something the Supreme Court cannot: allowing local conditions and traditions to affect their interpretation of a constitutional guarantee and the remedies imposed to implement that guarantee.") (quoting Jeffrey S. Sutton, *51 Imperfect Solutions: States and the Making of American Constitutional Law* 17 (2018)).

[¶20]   In our prior consideration of Article 1, Section 4 of the Wyoming Constitution, we have noted the textual differences between it and the Fourth Amendment and have concluded Article 1, Section 4 is more protective based on its requirement of an affidavit to support a warrant application. *Fertig*, 2006 WY 148, ¶ 16, 146 P.3d at 497 (quoting *O'Boyle*, 2005 WY 83, ¶¶ 24-25, 117 P.3d at 408-409). We have observed that, in the search and seizure context, only the fourth and sixth *Saldana* factors—preexisting state law and matters of particular state or local concern—are helpful to our analysis. *Id.* We turn then to Appellants' analysis under these two factors.

**Preexisting State Law**

[¶21]   As to the question of our preexisting state law, Appellants argue, "In essence, the Wyoming Supreme Court has been strict by requiring the State to provide a basis to search the interior of an automobile other than the fact that a defendant was placed under arrest." Certainly our Court has been more protective of the privacy of a vehicle's interior than the United States Supreme Court. *See Vasquez v. State*, 990 P.2d 476, 489 (Wyo. 1999) (rejecting bright-line rule announced in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) allowing search of vehicle incident to arrest without consideration of the surrounding circumstances). The question here, however, concerns the privacy interest in the public airspace outside a vehicle, and Appellants point to no state precedent recognizing such a privacy interest, particularly considering the minimally intrusive nature of an exterior canine sniff. *See Barekman v. State*, 2009 WY 13, ¶ 23, 200 P.3d 802, 807 (Wyo. 2009) ("Under Wyoming law, a person alleging an illegal search must demonstrate a legitimate expectation of privacy in the searched property.") (citing *Putnam v. State*, 995 P.2d 632, 636 (Wyo. 2000)).

[¶22]   Our precedent in fact suggests skepticism of such a privacy interest. In *Pellatz v. State*, this Court rejected a challenge to a search brought under Article 1, Section 4 and the Fourth Amendment. 711 P.2d 1138, 1140 (Wyo. 1986). In that case, the defendant was arrested on an outstanding warrant while driving a semi-truck with a trailer on which he was hauling a backhoe. *Id.* at 1139. When he was arrested, sheriff's personnel moved the semi-truck and trailer to a nearby truck stop and an acquaintance of the defendant then moved it to the public parking lot of a bar. *Id.* The sheriff's office subsequently learned the backhoe might be stolen, and a sheriff's investigator proceeded to the parking lot with the equipment vendor. *Id.* The vendor stepped onto the trailer and crawled under the backhoe where he found the product identification number, which allowed him to determine ownership. *Id.* The defendant argued the actions constituted an illegal search and moved to suppress the evidence under both Article 1, Section 4 and the Fourth Amendment. *Id.* at 1139-40.

[¶23]   Our Court upheld the denial of the motion to suppress, concluding that because the defendant had no privacy interest in the identification number, there was no search. *Id.* at

1140. It observed the trailer was parked in a public parking area and the defendant had taken no steps to conceal it from view. *Id.* at 1141. It held: "The present case involves looking at and not in, and the object was open and notoriously available for inspection." *Id.* at 1142.

[¶24] Since *Pellatz*, our interpretation of Article 1, Section 4 has evolved to require that searches and seizures "be reasonable under all of the circumstances." *Klomliam*, 2014 WY 1, ¶ 17, 315 P.3d at 669 (quoting *Phelps v. State*, 2012 WY 87, ¶ 16, 278 P.3d 1148, 1153 (Wyo. 2012) *overruled on other grounds by Allgier v. State*, 2015 WY 137, 358 P.3d 1271 (Wyo. 2015)). Appellants have not, however, shown how that evolution has enhanced an individual's privacy right in the airspace outside his or her vehicle; or how, even if an exterior sniff could be considered an intrusion, it would be unreasonable under all the circumstances if not supported by probable cause. Appellant's reliance on preexisting law therefore does not presently persuade us that the Wyoming Constitution requires probable cause for an exterior canine sniff of a vehicle.

## Matters of Particular State or Local Concern

[¶25] As to this factor, Appellants first argue Article 1, Section 4 should afford greater protection from a canine sniff of a vehicle's exterior because "Wyoming is a particularly freedom-loving state[.]" This type of general characterization, with no citation to authority or relevant examples, is unpersuasive. It does not provide a precise and analytical basis for finding the greater protection Appellants are urging.

[¶26] The authority Appellants rely on from other states does not persuade us otherwise. First, we have rejected bare reliance on decisions of other states as a basis to find broader protections under the Wyoming Constitution. *Morgan v. State*, 2004 WY 95, ¶ 21, 95 P.3d 802, 808 (Wyo. 2004). Additionally, aside from the Colorado Supreme Court's decision in *McKnight*, which we will discuss below in connection with Appellants' arguments based on the legalization of hemp, none of the decisions on which Appellants rely required that an exterior vehicle sniff be supported by probable cause. *See State v. Carter*, 697 N.W.2d 199, 202 (Minn. 2005) (canine sniff of a storage unit's exterior requires reasonable suspicion); *Commonwealth v. Rogers*, 849 A.2d 1185, 1191 (Pa. 2004) (canine sniff of vehicle's exterior requires reasonable suspicion); *State v. Tackett*, 67 P.3d 295, 302-03 (Mont. 2003) (same); *State v. Wiegand*, 645 N.W.2d 125, 134 (Minn. 2002) (same); *State v. Pellicci*, 580 A.2d 710, 717 (N.H. 1990) (same); *Commonwealth v. Johnston*, 530 A.2d 74, 79 (Pa. 1987) (canine sniff of storage locker's exterior requires reasonable suspicion); *Pooley v. State*, 705 P.2d 1293, 1311 (Alaska Ct. App. 1985) (exposure of luggage to exterior canine sniff requires reasonable suspicion).[3]

---

[3] Appellants also cite to *Commonwealth v. Martin*, 626 A.2d 556, 560 (Pa. 1993), which held that a canine sniff of a person requires probable cause. A canine sniff of a person presents a different question from the one before us in this case.

8

[¶27] Appellants next assert that Wyoming's legalization of hemp is a matter of particular state or local concern that should prompt greater protection from a canine sniff of a vehicle's exterior under Article 1, Section 4. They contend that a drug-detecting dog cannot differentiate between marijuana, which is illegal in Wyoming, and hemp, which is now legal in Wyoming, and thus the exterior sniff of a vehicle may detect lawful activity. This they argue makes the sniff more intrusive. We disagree. *See Caballes*, 543 U.S. at 408-09, 125 S.Ct. at 837-38 (exterior sniff of vehicle not a search because canine can only detect contraband in which individual has no privacy interest).

[¶28] Neither Ms. Joseph nor Mr. Tarzia established that either canine in this case would have alerted to the presence of hemp.[4] In the case of the canine that performed an exterior sniff of Ms. Joseph's vehicle, Deputy Lehr, the handler, testified that Zeus has never been exposed to hemp, but he is confident that when Zeus alerts, it is to one of the five illegal substances on which he has been trained. He further agreed in his testimony that Zeus cannot differentiate between high-grade marijuana and "Kansas ditch weed."[5] A reasonable view of this evidence is that we simply do not know whether Zeus would alert to the presence of hemp during an exterior vehicle sniff.

[¶29] In the case of the canine that performed the exterior sniff of Mr. Tarzia's vehicle, Trooper Deckert testified that he had not trained Yeager on hemp. Beyond that, Mr. Tarzia presented the testimony of Robert Piper, an attorney who was formerly a canine officer. He testified, "It is my belief that a – that a dog that is properly trained and certified on marijuana will also alert to hemp because the chemical composition is the same." He offered no opinions as to Yeager or his training or performance. Viewing the evidence in the light most favorable to the district court's finding, we agree it was not clear Yeager would alert to hemp.

[¶30] Aside from the record deficiencies, we also find Appellants' reliance on the Colorado Supreme Court's decision in *McKnight* to be misplaced. In *McKnight*, the Colorado court held that the constitutional amendment to legalize marijuana had essentially created a concomitant constitutional right to privacy in the possession of marijuana because

---

[4] The district court ruling on Ms. Joseph's motion to suppress did not address the ability of that canine, Zeus, to distinguish between marijuana and hemp. The district court ruling on Mr. Tarzia's motion to suppress included a finding that it was not clear the canine that performed the exterior sniff of that vehicle would alert to hemp. "On those issues where the district court has not made specific findings of fact, this Court will uphold the general ruling of the court below if supported by any reasonable view of the evidence." *Pryce*, 2020 WY 151, ¶ 16, 477 P.3d at 95 (quoting *Feeney v. State*, 2009 WY 67, ¶ 9, 208 P.3d 50, 53 (Wyo. 2009)). Where a finding is made, we review the evidence in the light most favorable to the district court's finding. *Id.* at 94. We will thus review the evidence on this question to determine whether a reasonable view of the evidence supports the ruling on Ms. Joseph's motion, and in the light most favorable to the district court's finding in ruling on Mr. Tarzia's motion.

[5] "Kansas ditch weed" was a term defense counsel used in his cross-examination of Deputy Lehr. It is not defined in the record.

the amendment "reflects a desire to protect 'individual privacy.'" 446 P.3d at 408. Appellants point to no similar constitutional implications or rights that flow from the legalization of hemp in Wyoming. Additionally, the Colorado court did not address how the legalization of marijuana created a privacy interest in the airspace outside the vehicle. *Id.* at 420 ("[T]he majority skirts a critical question in the analysis: Does a driver have a reasonable expectation of privacy in the odors that escape from his car and become part of the public airspace?") (Samour, J., dissenting).

[¶31] Appellants' analysis of matters of particular state or local concern is no more persuasive to us than was their analysis of preexisting state law. They have not shown how the legalization of hemp created a privacy right in the airspace outside a vehicle. Even if an exterior sniff could be considered an intrusion, they have not demonstrated how the legalization of hemp has made the exterior sniff unreasonable under all the circumstances if it is not supported by probable cause.

[¶32] As a final matter, Appellants invite this Court to hold that the automobile exception to the requirement of a warrant violates Article 1, Section 4 if there are no exigent circumstances to justify the search. This argument is not supported by an independent state constitutional analysis, and we therefore do not consider it. *Gibson*, 2019 WY 40, ¶ 13, 438 P.3d at 1259 ("[W]e consistently decline to decide cases under the Wyoming Constitution that are not supported by cogent argument in the lower court or on appeal.").

[¶33] Affirmed.